In the Matter of the Application of DAVID HIRSHFIELD, as Commissioner of Accounts of the City of New York, Appellant and Respondent, for a Warrant of Attachment against CHARLES L. CRAIG, Respondent and Appellant. (Proceedings Nos. 1 and 2.)

In the Matter of the Application of DAVID HIRSHFIELD, as Commissioner of Accounts of the City of New York Respondent, for a Warrant of Attachment against AUGUSTUS J. RINN, Appellant.

New York (city of) — provision of charter directing Commissioner of Accounts to make an examination of receipts and disbursements in offices of Comptroller and Chamberlain — power of Commissioner to subpœna witnesses — power to examine limited to examination of accounts and methods — Commissioner has power in proper cases to require production of books and papers by subpœna duces tecum.

1. Section 119 of the charter of the city of New York provides that: " It shall be the duty of the commissioner of accounts, once in three months, to make an examination of the receipts and disbursements in the offices of the comptroller and chamberlain, in connection with those of all the departments and officers making returns thereto, and report to the mayor a detailed and classified statement of the

financial condition of the city as shown by such examinations. He shall also make such special examinations of the accounts and methods of the departments and offices of the city and of the counties of New York, Richmond, Queens, Kings and Bronx, as the mayor may from time to time direct, and such other examinations as the said commissioner may deem for the best interests of the city, and report to the mayor and the board of aldermen the results thereof. For the purpose of ascertaining facts in connection with these examinations he shall have full power to compel the attendance of witnesses, to administer oaths and to examine such persons as he may deem necessary." Under this statute the Commissioner's power of examination of the accounts and methods of the office of the Comptroller is not limited to the mandatory periodical examination set out in the statute and is not exhausted when such an examination has been held. There is conferred upon the Commissioner of Accounts the same permissive power to make special examination of the accounts and methods of the Department of Finance as was granted to him in regard to other departments. Further, the right to hold special examinations is made to depend not upon the fact that an examination would be for the best interests of the city, but upon the fact that the Commissioner who has been directed to hold it *deems* it for the best interests of the city. The courts cannot assume to pass upon the good faith of public officers in the performance of their functions, or review a decision of the Commissioner that an examination will be for the best interests of the city.

2. The intent of the statute was to clothe the Commissioner with power to ascertain not only what the books of the office showed, but what they ought to show, by requiring witnesses to submit to an examination, to the end that the actual transaction of the office in all its details, as well as every act of the officer himself and his subordinates and employees in connection therewith might be laid before the Mayor. But the Commissioner of Accounts has no power to make a special examination of any matter which is not in any way a part of the accounts and methods of some department or office, and does not concern a transaction which properly should be shown in the books of that department or office. His power to make examinations at the direction of the Mayor is clearly limited to examinations of the accounts and methods of such departments and offices, and under any reasonable construction of the statute his power to make such " other examinations as he may deem for the best interests of the city " is subject to the same limitation. His right to summon witnesses must be confined to proceedings in connection with those examinations which he is expressly authorized to make, *i. e.*, examinations of accounts and methods of city or county departments.

3. A subpœna was directed to the Comptroller in connection with " an examination of the New York City Employees' Retirement System." In effect, it is an examination of the " accounts and methods " of the Comptroller's office in connection with the management of the affairs of that system, and even though the scope of the examination be defectively described, the right of the Commissioner to hold such an examination is clear. The court looks to the substance and not the form.

4. There is no authority vested in the Commissioner of Accounts to compel witnesses to appear for the purpose of testifying in order that the Commissioner of Accounts may prepare a report to the Commissioners of the Sinking Fund upon the expediency of a proposed exchange of lands between the city and another owner. The subject-matter of the examination is not in any way connected with the " accounts and methods " of any department or office.

5. The Comptroller is bound to appear in answer to a subpœna issued in connection with an examination which the Commissioner of Accounts has authority to make, regardless of any views he may hold as to the reason why the examination is being held, but correlatively he is entitled to demand that the Commissioner of Accounts shall not seek to question him in regard to matters over which the Commissioner has no jurisdiction.

6. The city has appealed from so much of the orders of the Appellate Division as struck out from the subpœna and from the attachment the provision which directed the Comptroller to bring with him certain records and exhibits. Section 406 of the Civil Practice Act prescribes in subdivision 1 that where a " person, * * * has been heretofore or is hereafter expressly authorized by law to hear, try or determine a matter or to do any other act in an official capacity, in relation to which proof may be taken, or the attendance of a person as a witness may be required," a subpœna may be issued " requiring the person to attend; and also, in a proper case, to bring with him a book or a paper." Here is clear authority for the issuance of a subpœna *duces tecum* by the Commissioner of Accounts. This authority is, however, limited. It may issue only in a proper case, and it may require the witness to bring only a book or paper. The subpœna issued in connection with the New York City Employees' Retirement System required the production of " all records of investments, * . * * securities, cash or other evidence of deposits of moneys " relating to that fund. It is clear that " cash " is not a " book or paper " within the intent of the statute, and no authority exists by which its production may be required.

7. The same considerations render unenforcible the provisions of the subpœna requiring the production of records and exhibits in

connection with the examination as to the carrying out of the court house contracts. Samples of granite are obviously not books or papers and no special circumstances are shown which make out a proper case for a direction to produce public records.

*Matter of Hirschfield* v. *Craig* (*Proceedings 1 & 2*), 209 App. Div. 555, affirmed.

*Matter of Hirschfield* v. *Rinn*, 209 App. Div. 555, reversed.

(Argued October 1, 1924; decided November 25, 1924.)

CROSS-APPEALS in the first above-entitled proceeding, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 6, 1924, which modified and affirmed as modified an order of Special Term denying a motion to vacate a warrant of attachment.

Cross-appeals in the second above-entitled proceeding, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 6, 1924, which reversed an order of Special Term continuing the said proceeding for the purpose of taking evidence therein, denied an application to vacate the warrant of attachment and modified the same by striking out provisions requiring the production of documents and papers.

Appeal in the third above-entitled proceeding from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 6, 1924, which affirmed an order of Special Term denying a motion to vacate a warrant of attachment.

*Charles L. Craig*, appellant and respondent in person, and for Augustus J. Rinn, appellant. The authority of the Commissioner of Accounts in relation to the Department of Finance is defined and limited by the statute and the attempts made by the Commissioner of Accounts in the present proceedings are in excess of such authority. (L. 1873, ch. 335, § 106; L. 1882, ch. 410; L. 1901, ch.

466, §§ 119, 195; L. 1916, ch. 517.)   The application of the principle *expressio unius est exclusio alterius* conclusively negatives the existence of the authority assumed by the Commissioner of Accounts.   (*Matter of Bonnaffe,* 23 N. Y. 169; *Wallace* v. *Swinton,* 64 N. Y. 188; *Pratt* v. *Short,* 79 N. Y. 437; *N. Y. C. & H. R. R. Co.* v. *Reusens,* 151 App. Div. 458; *Matter of Engel,* 155 App. Div. 467; *Matter of Aylesworth* v. *Phœnix Cheese Co.,* 170 App. Div. 34; *People ex rel. Donahue* v. *French,* 12 Hun, 254; *People ex rel. Emerick* v. *Fire Comrs.,* 23 Hun, 317; *Aultman & Taylor Co.* v. *Syme,* 163 N. Y. 54; *Hanley* v. *Hirshfield,* 228 N. Y. 346.)   If there were any doubt concerning the authority of the Commissioner of Accounts it has been settled by more than half a century of practical construction.   (*Grimmer* v. *Tenement House Dept.,* 205 N. Y. 549; *People ex rel. Werner* v. *Prendergast,* 206 N. Y. 405; *Wintersteen* v. *City,* 220 N. Y. 62; *Matter of City of New York,* 217 N. Y. 1; *City* v. *New York City R. Co.;* 193 N. Y. 543; *People ex rel. Met. Life Ins. Co.* v. *Knapp,* 193 App. Div. 413; *Story* v. *Craig,* 231 N. Y. 40.)   No authority whatever has been conferred upon the Commissioner of Accounts in relation to the members of the legislative governing boards and bodies of the city of New York.   (*People ex rel. Hannan* v. *Bd. of Health,* 153 N. Y. 513; *People* v. *Fitzgerald,* 180 N. Y. 269; *People ex rel. Hallock* v. *Hennessy,* 205 N. Y. 301; *Matter of Bonnaffe,* 23 N. Y. 169; *Pratt* v. *Short,* 79 N. Y. 437; *Wallace* v. *Swinton,* 64 N. Y. 188; *New York Central & H. R. R. Co.* v. *Reusens,* 151 App. Div. 458; *Matter of Engel,* 155 App. Div. 467; *Matter of Aylesworth* v. *Phœnix Cheese Co.,* 170 App. Div. 34; *People ex rel. Donahue* v. *French,* 12 Hun, 254.)   The ruling or order of the Special Term was proper.   The controverted questions of fact in relation to the abuse of the authority of the Commissioner of Accounts must be competently established to justify the writ of attachment in a case where authority exists.   (*Matter of Barnes,* 204 N. Y. 108;

*Matter of Depue,* 185 N. Y. 60; *People ex rel. Moore v. Holmes,* 151 App. Div. 257; *People ex rel. Woodbury v. Hendrick,* 215 N. Y. 339; *Matter of Lee,* 220 N. Y. 532; *Matter of Hirshfield v. Hanley,* 228 N. Y. 346.) Fundamental principles of law require that attempts by one branch of the government to usurp the functions and destroy the authority of another co-ordinate branch should be resisted and restrained. (*Matter of Fleischmann v. Graves,* 235 N. Y. 84; *Hirshfield v. Hanley,* 228 N. Y. 346; *Matter of Barnes,* 204 N. Y. 108.) No power is conferred upon the Commissioner of Accounts to require attendance before him for the purpose of producing papers and documents and the writ of attachment granted for that purpose is void. (*Matter of Barnes,* 204 N. Y. 108; *Matter of Bradner,* 87 N. Y. 171; *People ex rel. Webster v. Van Tassel,* 64 Hun, 444; *Matter of Foster,* 130 App. Div. 769; *Matter of Union Bank,* 147 App. Div. 593; *Matter of Wallstein,* 178 App. Div. 140.)

*George P. Nicholson, Corporation Counsel (John F. O'Brien, John Lehman* and *Russell Lord Tarbox* of counsel), for David Hirshfield, as Commissioner of Accounts of the city of New York, respondent and appellant. Section 119 of the charter vests the Commissioner of Accounts with authority to make such examinations as he " may deem for the best interests of the city." In such examinations he shall have full power to examine " such persons as he may deem necessary," including the Comptroller. (*Matter of Hertle,* 120 App. Div. 717; 190 N. Y. 531; *Matter of Hirshfield,* 227 N. Y. 297; *Matter of Wallstein,* 178 App. Div. 140; *Matter of Hirshfield,* 228 N. Y. 346.) The exercise of the power conferred upon the Commissioner of Accounts by section 119 of the charter cannot be defeated by the accident of personal dislike. His motives, even if unfriendly, are immaterial. (Throop on Public Officers, § 567; *Moran v. McClearns,* 4 Lans. 288, 290, 291; *East River Gas-Light*

*Co.* v. *Donnelly,* 93 N. Y. 557; *Spalding* v. *Vilas,* 161 U. S. 483; *Beardsley* v. *Kilmer,* 236 N. Y. 80; *Matter of Bodenheimer* v. *Hirshfield,* N. Y. L. J. Jan. 27, 1923; *Matter of Hirshfield* v. *Buchler,* N. Y. L. J. Aug. 12, 1922; *Matter of Hertle,* 120 App. Div. 717; *Hamlin* v. *Bender,* 92 Misc. Rep. 16, 20; *People ex rel. Metz* v. *Dayton,* 120 App. Div. 814; *People ex rel. Walter* v. *Woods,* 168 App. Div. 3; *People ex rel. H. D. H. Realty Corp.* v. *Murphy,* 194 App. Div. 530.) Section 119 of the charter and section 406 of the Civil Practice Act authorize the issue of subpœnas *duces tecum.* (*Matter of Hertle,* 120 App. Div. 717; 190 N. Y. 531; *Matter of Foster,* 139 App. Div. 769; *Matter of Wallstein,* 178 App. Div. 140; *Matter of City of Niagara Falls,* 229 N. Y. 333; *Matter of Barthelmess,* 231 N. Y. 435; *Orinoco Realty Co.* v. *Bandler,* 233 N. Y. 24; *People ex rel. Davidson* v. *Gilon,* 126 N. Y. 147; *Grimmer* v. *Tenement House Dept.,* 205 N. Y. 549; *Matter of City of New York,* 217 N. Y. 1; *Bullock* v. *Cooley,* 225 N. Y. 566; *Story* v. *Craig,* 231 N. Y. 33; *City of New York* v. *Union Ry. Co.,* 206 App. Div. 472; 238 N. Y. 289.)

LEHMAN, J. Upon motion of the Commissioner of Accounts of the City of New York, a warrant of attachment has issued against Augustus J. Rinn, the Appraiser of Real Estate in the Department of Finance of the City of New York, and two warrants of attachment against Charles L. Craig, the Comptroller of the City of New York, for their failure to appear at hearings before the Commissioner of Accounts, in obedience to subpœnas which he had caused to be served upon them in three investigations or examinations which the Commissioner of Accounts has attempted to institute, pursuant to powers which he claims are vested in him under section 119 of the charter of the city of New York. (L. 1901, ch. 466 as amended.) Motions to vacate the attachments were thereupon made in each proceeding, and these motions

have resulted in orders of the Appellate Division denying the motions but modifying two of the warrants by striking out provisions requiring the production of documents or other exhibits.

Section 119 of the charter provides that:

" It shall be the duty of the commissioner of accounts, once in three months, to make an examination of the receipts and disbursements in the offices of the comptroller and chamberlain, in connection with those of all the departments and officers making returns thereto, and report to the mayor a detailed and classified statement of the financial condition of the city as shown by such examinations.

" He shall also make such special examinations of the accounts and methods of the departments and offices of the city and of the counties of New York, Richmond, Queens, Kings and Bronx, as the mayor may from time to time direct, and such other examinations as the said commissioner may deem for the best interests of the city, and report to the mayor and the board of aldermen the results thereof. For the purpose of ascertaining facts in connection with these examinations he shall have full power to compel the attendance of witnesses, to administer oaths and to examine such persons as he may deem necessary."

The Comptroller urges that when the Legislature provided for mandatory examinations, every three months, of " the receipts and disbursements in the offices of the Comptroller and Chamberlain," it intended to limit the inquisitorial power of the Commissioner of Accounts over the Department of Finance to such examinations and that the subsequent clauses authorizing the Commissioner to make special examinations of the " accounts and methods of the departments and offices of the city of New York and the counties of New York, Richmond, Queens, Kings and Bronx " was not intended to give the Commissioner any power to make additional special

examinations in the Department of Finance at the direction of the Mayor or as the Commissioner " may deem for the best interests of the city." He further urges that the subpœnas have been issued by the Commissioner not for the purpose of obtaining information in connection with an examination undertaken in the best interests of the city but for the purpose of harassing and annoying the Comptroller and of obtaining an opportunity for unfair attacks upon him.

The Appellate Division has decided that the Commissioner's power of examination of the accounts and methods of the office of the Comptroller is not limited to the mandatory periodical examination and is not exhausted when such an examination has been held and that when the Commissioner undertakes a further examination the courts cannot permit a prospective witness to challenge the good faith of the Commissioner or to litigate the question of whether the examination has been in fact instituted in the interests of the city.

The question before the courts concerns only the power bestowed by the Legislature upon the Commissioner as an administrative officer of the city. We do not pass upon the wisdom of the provision in its present form nor whether it should be extended or limited. The rights or wrongs of any personal or political controversy between the Commissioner and the witness he seeks to examine are irrelevant to the determination of the legislative intent when it enacted the statute. We must find in the language of the statute interpreted, it may be, in the light of established public policy or of conditions as they existed when the statute was passed, the extent and limitations of the power conferred. Events which have occurred subsequently can have no bearing on this question and, in considering it, we brush aside all charges and countercharges embodied either in the affidavits or briefs of the parties.

It seems to us that the language of the statute is clear

and that the Appellate Division correctly decided that this section of the charter conferred upon the Commissioner of Accounts the same permissive power to make special examination of the accounts and methods of the Department of Finance as was granted to him in regard to other departments. The fact that the financial accounts of the city would naturally be kept in the Department of Finance might well lead the Legislature to impose upon the Commissioner of Accounts, as his primary duty, a definite command to make a periodic examination of the receipts and disbursements in the offices of the Comptroller and Chamberlaim, but the Legislature has seen fit in addition to give the Commissioner a permissive power to make special examinations of the accounts and methods of the departments and offices of the city of New York and of the counties embraced within the territorial limits of the city, and there is nothing in the language of the statute to suggest that the Legislature in using the term " departments of the city " meant to exclude the Department of Finance. We may assume that it was the opinion of the Legislature that the mandatory periodic examination would provide all such safeguards and information as would contribute constantly and normally to the best interests of the city, yet, on occasion, further information might be of benefit to the city and its officers.  We may assume also that ordinarily such information could be obtained, without a formal special examination, by mere request from one public official to another, yet the Legislature might reasonably decide that special examinations in regard to matters pertaining to the accounts of the Department of Finance might on occasion serve a useful purpose; and no possible inference can be drawn from the express command to the Commissioner of Accounts to make, periodically, a particular examination of matters pertaining to the accounts in the Comptroller's office, that the Legislature intended that the Commsisioner's permissive power to make occasional

special examinations should not include examinations in this office, as well as the other offices of the city. The fact that until now no Commissioner of Accounts has ever undertaken to hold any special examination of the Department of Finance may perhaps more reasonably be regarded as evidence sustaining the correctness of the assumption that occasion for the use of this power would rarely arise than as evidence that all previous Commissioners of Accounts have construed the statute as withholding from them the power to conduct such special examination, should such occasion arise.

We find no force in the claim that under this construction of the statute, the Mayor can interfere, through the Commissioner of Accounts appointed by him, in the administration of the Comptroller's office, and that the independence of the Department of Finance, which hitherto has been safeguarded as a matter of sound public policy, is diminished or destroyed. The Department of Finance, though not subject to the control of the Mayor, is a part of the city government and its administration and especially the amount and nature of the public funds in its custody are a matter of concern to the Mayor and other officers of the city government. It can hardly be disputed that even independent officers of the city must work in co-operation in order to secure proper government efficiency. Section 119 of the charter does not give the Mayor any right to control the actions of the Comptroller; or of the heads of departments or offices of the city or the counties named. Some of these officers are appointed by the Mayor and are subject in a sense to the Mayor's control by virtue of other sections of the charter, but other officers, such as the county officers and the Presidents of the boroughs, are elected independently and are in no wise responsible to the Mayor for the proper administration of their offices; yet we have consistently held that the Commissioner of Accounts appointed by the Mayor has the right to make

special examinations of the accounts and methods of their offices. (*Matter of Hirshfield* v. *Cook*, 227 N. Y. 297; *Matter of Hirshfield* v. *Hanley*, 228 N. Y. 346; *Matter of Hertle* [*Ahearn*], 120 App. Div. 717; affd., 190 N. Y. 531.) The right to examine their accounts and methods implies no right in either the Commissioner or the Mayor to direct changes in the administration of their departments or offices. Its purpose and result is the disclosure of details of the public administration which the Mayor or the Commissioner of Accounts finds should be disclosed. The only possible basis of the claim in this case that the Commissioner of Accounts' right to examine diminishes or destroys the Comptroller's administrative independence is that the Commissioner of Accounts might prostitute his powers and so conduct an examination as to harass the Comptroller and perhaps intimidate him to an extent that would render him practically, if not theoretically, subservient to the Mayor. The courts will not assume that public officers will act dishonestly or dishonorably or use their public trust for private ends and it cannot be said that the Legislature may not reasonably be presumed to have intended to confer a power which in the hands of an unfaithful public servant might be used for improper purposes.

We have considered so far only the construction of the statute in view of the *possibility* of the abuse by the Commissioner of Accounts of powers which the Commissioner claims have been conferred upon him. It is now urged upon us that the Comptroller upon the motions to vacate the attachments has alleged facts which if true would tend to show not merely that there is a theoretical possibility that the Commissioner of Accounts might abuse his power to examine the accounts and methods of the Department of Finance, but that he is in fact doing so; that the subpœnas have been issued in investigations or examinations which have been undertaken not because the Commissioner deems them for the best

interests of the city, but because through them he may injure or annoy the Comptroller; and that no process of the court should issue to aid an examination so undertaken. These allegations are denied, and the Appellate Division has held that the courts will not examine into their truth. We agree with this conclusion. When the Legislature authorized the Commissioner to make " such special examinations * * * as the Mayor may from time to time direct and such other examination as the said Commissioner may deem for the best interests of the city," it made the Mayor or the Commissioner the sole judges of when and whether such examination should be held. The right to hold special examinations is made to depend not upon the fact that an examination would be for the best interests of the city, but upon the fact that the Commissioner who has been directed to hold it *deems* it for the best interests of the city. The courts cannot assume to pass upon the good faith of public officers in the performance of their functions, and any attempt to pass upon the contention of a proposed witness that he should not be compelled to appear at an examination because the examination cannot result in any benefit to the city or is undertaken for reasons other than that the Commissioner deems it for the best interests of the city, would result in interference with an administrative officer in the performance of his work. The courts pass no judgment upon questions which the Legislature under its constitutional power has submitted for decision to administrative officers, in the performance of purely administrative functions. The Legislature permits the Commissioner to decide whether the examination would be for the best interests of the city and to issue subpoenas to witnesses. The courts are given no power to review or set aside such decision. The protection of the courts may be invoked only against attempts in the course of such examinations to infringe the rights of the citizen or to cause him some legal wrong. In this proceeding we do

not attempt to decide the exact point where that protection might be invoked or where an abuse of the Commissioner's powers might constitute a wrong of which the courts will take cognizance. We do not assume that there is any probability that occasion may arise hereafter for the presentation of such a question to the court. We decide only that the Commissioner of Accounts has the same power to make special examinations of the accounts and methods of the Department of Finance as he has to make special examinations of the accounts and methods of other departments; that he may subpœna upon such examination the Comptroller in the same manner as he might subpœna any other officer or person, and that the proposed witnesses who have been subpœnaed may not call upon the courts to pass upon the purpose or good faith of the Commissioner in making such examination.

The power of the Commissioner to make special examinations has been challenged in a number of proceedings which have heretofore been reviewed by this court, and in all these cases that power has been confirmed. In these proceedings the Commissioner of Accounts set forth in his application for attachment against recalcitrant witnesses that he was making an examination or investigation of the accounts or methods of particular departments or offices, and we were called upon to decide only whether the statute gave the Commissioner of Accounts authority to make special examinations of the accounts of these particular departments or offices. In the proceedings now before us the " examinations " are differently described, and we are now called upon to determine whether the power of the Commissioner to make examinations extends not only to particular departments or offices, but is sufficient to cover the subject-matter of the examination here attempted. The Commissioner of Accounts, as the title of his office indicates, is an administrative officer whose functions concern primarily the books and accounts of the city. He is authorized to

make special examinations of the accounts and methods of various departments and officers at the direction of the Mayor, " and such other examinations as the said commissioner may deem for the best interests of the city." The courts have given a liberal construction to the language describing the scope of such examinations.

In *Matter of Hertle* [*Ahearn*] (120 App. Div. 717, 720; affd., 190 N. Y. 531) Judge McLAUGHLIN, then a member of the Appellate Division of the first department, pointed out that the intent of the statute was to clothe the Commissioner " with power to ascertain not only what the books of the office showed, but what they ought to show, by requiring witnesses to submit to an examination, to the end that the actual transactions of the office in all its details, as well as every act of the officer himself and his subordinates and employees in connection therewith might be laid before the Mayor." Since that decision successive Commissioners of Account have exercised the broad powers conferred upon them under that construction of the statute, and we shall not place any new or narrower construction upon it. No court, however, has held that the Commissioner of Accounts has power to make a special examination of any matter which is not in any way a part of the *accounts and methods* of some department or office, and does not concern a transaction which properly should be shown in the books of that department or office. His power to make examinations at the direction of the Mayor is clearly limited to examinations of the accounts and methods of such departments and offices, and under any reasonable construction of the statute his power to make such " other examinations as he may deem for the best interests of the city " is subject to the same limitation. He is not a judicial officer nor part of the police system or the legal department of city, county or State, and he has not been given inquisitorial powers to investigate charges of wrongdoing nor to compel the disclosure of any matter upon which he thinks the officers of the city

should be informed.  It seems evident that his right to summon witnesses must be confined to proceedings in connection with those examinations which he is expressly authorized to make, *i. e.*, examinations of accounts and methods of city or county departments.  The language of the statute does does not fairly admit of any other construction, and the Legislature can hardly have intended to confer upon an administrative officer the unrestricted power to summon witnesses to testify upon an examination in regard to any matter which the Commissioner might see fit to investigate.  We give the words " accounts and methods " used in the statute a broad construction so as to effectuate the legislative purpose, but under the plain language of the section we are precluded from holding that the Commissioner has power to make any examination except of " accounts and methods " so construed.

In one proceeding before us a subpoena has been directed to the Comptroller in connection with " an examination of the New York City Employees' Retirement System." In effect, it is an examination of the " accounts and methods " of the Comptroller's office in connection with the management of the affairs of that system, and even though the scope of the examination be perhaps defectively described, the right of the Commissioner to hold such an examination is clear, and we look to the substance and not the form.  The motion to vacate the attachment was, therefore, properly denied.

In the proceedings for the attachment against August Rinn, it appears that the subpoena was issued in connection with an " investigation of a proposed exchange of real estate between the city of New York and the Harlem Railroad and the New York Central Railroad now pending before the Commissioners of the Sinking Fund."  Apparently the purpose of the investigation is to enable the Commissioner of Accounts to report to the Commissioners of the Sinking Fund upon the expediency of the proposed exchange and is being made at their

8

request. We do not pass upon the question of whether the Commissioner of Accounts may properly make such a report. That is merely a detail of the administrative machinery of the city with which we are not now concerned; but we find no authority vested in the Commissioner of Accounts to compel witnesses to appear for the purpose of testifying in order that the Commissioner may prepare such a report. If the Commissioner of Accounts has the power to compel the attendance of witnesses at such an examination, he has also the power to compel them to answer questions which are competent, material and relevant to the subject-matter of the examination. The subject-matter of the examination is not in any way connected with the " accounts and methods " of any department or office no matter how broadly these words are construed, and it seems clear that if the Commissioner of Accounts has the right to summon witnesses in this proposed examination or investigation, he must have a commission to summon witnesses and compel them to testify in regard to any matters in which the city or any of its officers may be concerned. Under no more limited power of examination can the issuance of the subpoena against August Rinn be justified. A city officer is doubtless in a better position to serve the public if he has acquired sufficient information to enable him to pass intelligently upon all matters before him, but no contention can well be made that the Legislature has attempted to grant to an administrative officer the extraordinary power to obtain such information by unrestricted examination of any person who knows any relevant facts. For these reasons the motion to vacate the attachment against August Rinn should have been granted.

In the third proceeding it appears that a subpoena was issued " in the matter of an inquiry and examination *upon the complaint* of Patrick Ryan, of the method of construction of the new Court House and the carrying

out of the contracts by the contractor, *and also* as to the quality and sufficiency of the granite furnished by the contractor for the Court House under that contract." (Italics are ours.)

The Commissioner of Accounts is not invested with the judicial functions of a magistrate and neither he nor any officer of the city may place the Comptroller on trial in answer to a complaint or charges that may be presented. On the other hand, a complaint may in a proper case furnish the Commissioner of Accounts with grounds upon which he might determine that an examination of the accounts and methods of some department or office would be for the best interests of the city and, as we have stated above, we look to the substance of the application for an attachment rather than to its form, to determine whether the subpœna has been issued in connection with an examination which the Commissioner is authorized to make. The contract for the court house and the payments to the contractor if he complies with the contract, must obviously become part of the accounts of a department or office of the city and doubtless the Commissioner of Accounts is authorized to make an examination in regard to matters which concern items which must enter into the accounts. If the examination were in terms confined to the " carrying out of the contracts by the contractor " it would have been within the scope of the powers of the Commissioner and even though so confined, it would have permitted an inquiry into whether the contractor used the method of construction and furnished granite of the quality and sufficiency required by the contract. Does the present examination include other subjects? The answer to that question is not free from doubt. The examination in form includes not only an inquiry " into the carrying out of the contracts by the contractor " but as separate subjects of examination also " the method of construction of the new Court House   *   *   *   *integral *and also* as to the quality

and sufficiency of the granite furnished by the contractor for the Court House under that contract." It suggests, at least, that the Commissioner intends to examine not merely into the question of whether the contractor complied with the contract but also into the question of whether the contract was provident in view of the method of construction and the quality of granite specified in the contract.

The statute has given the Comptroller certain powers and the Commissioner of Accounts cannot pass upon the discretion of the Comptroller in the performance of his official duties. The Comptroller was required to pass upon the details of the court house contract before it was signed and he may not be questioned as to why he exercised his discretion in the manner he did. Government can proceed in an orderly manner only if each officer of the government recognizes the powers conferred by statute upon other officers and submits himself to such powers. The Comptroller is bound to appear in answer to a subpoena issued in connection with an examination which the Commissioner of Accounts has authori y to make, regardless of any views he may hold as to the reason why the examination is being held, but correlatively he is entitled to demand that the Commissioner of Accounts shall not seek to question him in regard to matters over which the Commissioner has no jurisdiction. In spite of the fact that the Commissioner of Accounts has in this proceeding used language which might make the examination broader in scope than he has authority to hold, when it would have been a simple matter to define its scope more accurately, we will not assume that by the use of such ambiguous language he intended to question the Comptroller about the exercise of his discretion. It may not unreasonably be given the narrower construction which will bring the examination within the limits of the statutory powers intrusted to the Commissioner of Accounts and we prefer that construction

which sustains the validity of official acts. The motion to vacate the attachment was, therefore, properly denied.

The city has appealed from so much of the orders of the Appellate Division as struck out from the subpœna and from the attachment the provision which directed the Comptroller to bring with him certain records and exhibits. Section 406 of the Civil Practice Act prescribes in subdivision 1 that where a " person, * * * has been heretofore or is hereafter expressly authorized by law to hear, try or determine a matter, *or to do any other act in an official capacity, in relation to which proof may be taken, or the attendance of a person as a witness may be required,*" a subpœna may be issued " requiring the person to attend; *and also, in a proper case, to bring with him a book or a paper.*" We find in the parts of the section which we have italicised clear authority for the issuance of a subpœna *duces tecum* by the Commissioner of Accounts. This authority is, however, limited. It may issue only in a proper case, and it may require the witness to bring only a book or paper. The subpœna issued in connection with the New York City Employees' Retirement System required the production of " all records of investments, * * * securities, cash or other evidence of deposits or moneys " relating to that fund. We think it clear that " cash " is not a " book or paper " within the intent of the statute, and no authority exists by which its production may be required. We refrain from passing upon the question of whether " securities " or other evidence of deposit of moneys might be regarded as " books and papers " because in any event we feel that this is not a " proper case " to require their production. Like the " records of investment " they are part of the public records of the city and the right to inspect these records in the office where they are kept can be enforced by other means than by requiring their production through a subpœna *duces tecum.* The power to issue a subpœna requiring a person to attend as a witness is, under section 406 of the Code of Civil Procedure, absolute and unlimited.

The power to require the witness to bring with him a book or paper is limited to a " proper case." Where the statute has given an officer power to require the attendance of witnesses, we have pointed out, no legal wrong is suffered by the person subpœnaed unless he is wrongfully compelled to answer questions, after refusal, and he may ask the protection of the court only upon such refusal. A direction to produce a book or paper may in itself, if enforced, work harm to its custodian, and possibly infringe his constitutional rights, even though the document be not received in evidence. The Legislature has, therefore, provided that such a direction may be made only in a " proper case." This limitation would be ineffectual unless the person subpœnaed may secure an adjudication as to whether a proper case is presented before he can be compelled to obey the command contained in the subpœna. The Commissioner is not a judicial officer and has no power to make such an adjudication, and a motion to vacate the subpœna or attachment is, therefore, the proper remedy. Upon such motion the court will determine whether a " proper case " has been made out. What constitutes a " proper case " must depend upon the use to which the book or paper may be put when produced. In some cases, doubtless, the determination of the question will depend solely upon the relevancy and materiality of the exhibit. The Legislature could hardly have intended that an administrative officer authorized only to make an examination of accounts and methods of city or county departments or offices would, except under extraordinary circumstances, subpœna a public officer to produce before him public records which must at all times be open to public inspection. In such a case a " proper case " is made out only when there is ground to believe that the production of such records at the hearing will serve some reasonable purpose which could not be accomplished by an examination at the public office where they are usually kept. In the present

case no circumstances are shown which would lead to such an inference.

The same considerations render unenforcible the provisions of the subpœna requiring the production of records and exhibits in connection with the examination as to the carrying out of the court house contracts. Samples of granite are obviously not books or papers and no special circumstances are shown which make out a proper case for a direction to produce public records.

The order in *Matter of David Hirschfield (Rinn)* should, therefore, be reversed and two orders in *Matter of David Hirschfield (Craig) No. 1* and *No. 2* should be affirmed, without costs to either party.

In proceedings Nos. 1 and 3, all concur.

In proceeding No. 2, all concur, except HISCOCK, Ch. J., McLAUGHLIN and ANDREWS, JJ., who dissent and vote for reversal and denial of application.

Ordered accordingly.