In the Matter of FRANK COSTELLO, Petitioner. S. STANLEY KREUTZER, as Honorary Commissioner of Borough Works, Respondent.

Supreme Court, Special Term, New York County, October 9, 1951.

*George Wolf* for petitioner.

*Benjamin Heller* and *Martin H. Selman* for respondent.

McNALLY, J. This is a motion to quash a subpœna issued by S. Stanley Kreutzer, Honorary Commissioner of Borough Works.

In the course of hearings before the United States Senate Crime Committee, the petitioner, Frank Costello, testified he had known Angelo A. Simonetti, Secretary to Robert F. Wagner, Jr., President of the Borough of Manhattan, for about ten years and that he might have had dinner and drinks with him at various times. Thereafter Mr. Wagner purported to appoint S. Stanley Kreutzer as Honorary Commissioner of Borough Works to examine into the testimony before the committee regarding the relationship between Costello and Simonetti, to investigate into all matters bearing upon Simonetti's fitness to continue as secretary to the borough president, to hold public and private hearings, and to report his findings and conclusions. Costello has been served with a subpœna, signed by Mr. Kreutzer, directing his appearance for the purpose of testifying in the investigation.

A borough president may appoint and at pleasure remove a commissioner of borough works and other lesser officials. (New York City Charter, § 82, subd. b.) No one questions the right of the president of the borough of Manhattan to remove Simonetti without a hearing. Mr. Wagner's affidavit in opposition to this motion assigns the following as grounds for the investigation and testimony of the petitioner:

" Your deponent felt that the public interest required that the facts be ascertained in order that the decision to be ultimately made by him with respect to the continuance in office of the Secretary be based upon testimony and evidence of probative force. If facts existed affecting Mr. Simonetti's fitness to continue to hold public office, whether favorable or unfavorable, they should be elicited by an appropriate investigation in which sworn testimony may be presented with an adequate opportunity for full examination.

" The consequence of any other action would be to make a determination without competent evidence, facts or testimony. It was your deponent's desire that a decision to be made by him in the matter so affected with the public interest should be predicated on fact and not be open to the charge that it was arbitrary or capricious."

The petitioner's testimony before the United States Senate Crime Committee was under oath. It is not claimed or suggested that the petitioner's testimony will disclose facts relating to Simonetti other than those developed before the committee.

Simonetti has not requested that the subpœna to the petitioner be issued; his claim is '' Costello did not say that he was associated with me ''. The concern of the borough president regarding arbitrariness and capriciousness relates to a charge which may be leveled at him by persons other than Simonetti, who appears to be content to accept the action and the decision of the borough president without the benefit of the testimony of Costello.

The question presented is whether under the circumstances here present the honorary commissioner of public works may subpœna the petitioner. No provision authorizing the borough president to conduct investigations of any kind or to issue subpœnas is to be found in the New York City Charter or the Administrative Code, although provisions for investigative powers are expressly granted to the comptroller (Charter, § 93, subd. b); the council (Charter, § 43); the municipal civil service commission (Charter, § 814); the board of education (Charter, § 526); the commissioner of investigation (Charter, § 805); a Justice of the Supreme Court (Charter, § 889); fire department officials (Administrative Code, § 488[2]-1.0–488[2]-4.0); the police commissioner (Administrative Code, § 434a-14.0), and the commissioner of licenses (Administrative Code, § 773a-7.0). The mayor has the power to subpœna since he is a magistrate (Charter, § 6).

The respondent contends that the issuance of the subpœna is authorized by the provisions of section 406 of the Civil Practice Act which provides for subpœnas by '' a judge, or an arbitrator, referee *or other person,* or a board or committee * * * heretofore or * * * hereafter expressly authorized by law to hear, try or determine a matter, or *to do any other act in an official capacity, in relation to which proof may be taken,* or the attendance of a person as a witness may be required '' (subd. 1; italics supplied). Is the borough president '' a person * * * expressly authorized by law * * * to do any * * * act in an official capacity, in relation to which proof may be taken '' within the meaning of section 406? The words '' or the attendance of a person as a witness may be required '' may be disregarded for the very question to be decided is whether a borough president may require the attendance of witnesses.

The only official act of the borough president in relation to which the investigation could conceivably be pertinent is the possible removal of Simonetti as secretary to the borough president. The secretary holds office at the pleasure of the

borough president (Charter, § 82, subd. c). The secretary may be removed without cause and without any hearing. No claim is made that Simonetti is a veteran or volunteer fireman and the provisions of subdivision 1 of section 22 of the Civil Service Law, which alone provide for hearings as a condition precedent of discharge or removal, are therefore inapplicable. The investigation of Simonetti which the borough president has ordered is purely a matter of grace on his part. No case has been called to the court's attention or discovered by the court where the power of subpœna has been held to exist for the purpose of taking proof as to whether a person should be discharged or removed, *notwithstanding the absence of any statutory requirement that proof be taken*. The furthest the courts appear to have gone is to uphold the power of subpœna for the purposes of a hearing made mandatory by statute (*Matter of Reynolds* v. *Triborough Bridge & Tunnel Authority*, 276 App. Div. 388). In that case the petitioner was a war veteran and had an absolute right to a hearing under the provisions of subdivision 1 of section 22 of the Civil Service Law. The court there held that the provisions of section 406 of the Civil Practice Act, coupled with the provisions of the Civil Service Law entitling the petitioner to a hearing conferred upon the respondent the power to issue subpœnas.

In the *Reynolds* case it is clear that the presence of the requirement of a hearing on stated charges and on due notice in accordance with the provisions of section 22 of the Civil Service Law, together with the enabling provisions of section 406 of the Civil Practice Act, constituted the basis for holding that the respondent had authority to issue subpœnas. At page 392 the court there said: '' The authority, indeed, has not been given, under the Public Authorities Law, general powers to issue subpœnas, such as was given to the Power Authority by the Legislature in section 1006 of the Public Authorities Law. But no general grant of power is necessary in view of the provisions of the Civil Practice Act and of section 22 of the Civil Service Law. The power to try a veteran on charges carries with it the implied power to hear the case on competent evidence and, if necessary, to get the aid of a court of law in procuring the attendance of necessary witnesses. *Of course, this implied power to issue subpœnas applies only to the determination of the charges in hand*.'' (Italics supplied.)

If all that is necessary to sustain the power to issue subpœnas under section 406 of the Civil Practice Act is to show that it is or may be in aid of an '' act in an official capacity ''

then much that was said in the *Reynolds* case was unnecessary and the observation that "this implied power to issue subpœnas applies only to the determination of the charges in hand" is meaningless. The *Reynolds* case demonstrates that the subpœna power can rest on section 406 of the Civil Practice Act, when it appears that the doing of an official act requires the taking of testimony. In the *Reynolds* case the required official act was the conduct of a hearing on stated charges in accordance with section 22 of the Civil Service Law which carried with it the implied power to adduce competent evidence and to compel the attendance of witnesses. In the case at bar no hearing is required; the testimony of Costello has not been requested by Simonetti; nothing is required to perfect or carry out the right of the borough president to terminate the services of Simonetti, except the act of the borough president. The respondent has not demonstrated any impediment to his right to discharge Simonetti, if that is his pleasure, and does not point to any necessity for implying the requirement to investigate. On the contrary, it is clear from the provisions of the Charter and the Administrative Code that the respondent may terminate the services of Simonetti instantly and without cause. The implied power to investigate under such circumstances may not be spelled out (*New York Trap Rock Corp.* v. *Town of Clarkstown*, 299 N. Y. 77, 86; *People ex rel. City of Olean* v. *Western New York & Pennsylvania Traction Co.*, 214 N. Y. 526, 529; *Village of Fort Edward* v. *Fish*, 156 N. Y. 363, 372). "The implied power must be necessary, not merely convenient, and the intention of the legislature must be free from doubt" (*People ex rel. City of Olean* v. *Western New York & Pennsylvania Traction Co., supra*, p. 529). In the case at bar the necessity for the implied power hinges solely on the concern of the borough president that his decision in the matter may "be open to the charge that it was arbitrary or capricious." Obviously, that is insufficient to support the subpœna power in aid of an investigation. To hold otherwise would lodge the subpœna power in (if the word "may" as used in Civ. Prac. Act, § 406 were construed in its permissive sense) any official, *no matter how minor and subordinate,* who might *voluntarily* choose to take proof for the purpose of deciding whether or not to perform one of his duties, *however trifling and negligible* in character. The existence of such power in all persons who act in an official capacity, absent the express power to issue subpœnas, without the limitation or qualification that the taking of proof be required, might well result in the indiscriminate use of sub-

pœnas on a large scale by thousands of public employees. It is difficult to believe that the Legislature intended to open up the floodgates to this extent when it used the words " in relation to which proof may be taken."

Section 406 of the Civil Practice Act uses the words " in relation to which proof *may* be taken " (italics supplied). The word " may " is, however, often used in statutes in the sense of " must ". In interpreting statutes the word *may* should be construed as equivalent to *shall* or *must* in cases where the sense of the entire enactment requires it (*Treherne-Thomas* v. *Treherne-Thomas*, 267 App. Div. 509, 512; *People ex rel. Fiske* v. *Common Council of City of Brooklyn*, 22 Barb. 404; *Kansas City, W. & N. W. R. R. Co.* v. *Walker*, 50 Kan. 739), or where it is necessary in order to carry out the intention of the Legislature (*Minor* v. *Mechanics Bank of Alexandria*, 1 Pet. [U. S.] 46; *Supervisors* v. *United States*, 4 Wall. [U. S.] 435; *Kelly* v. *Morse*, 3 Neb. 224; 2 Bouvier's Law Dictionary [Rawle's 3d Revision], p. 2168).

The court accordingly holds that the borough president himself does not have the power to issue subpœnas for the purpose of taking testimony as a matter of favor and grace in aid of his power to remove Simonetti. It follows that Mr. Kreutzer, whose powers cannot exceed those of the borough president who appointed him, is without power to issue the subpœna.

Assuming, however, that the subpœna power resides in the borough president, it nevertheless appears that the respondent is not vested with that power. The City of New York is a creature of the State of New York, deriving its powers from the Legislature of the State. The powers of the city and its officials, therefore, must be based on express legislative provisions (*Ryan* v. *City of New York*, 177 N. Y. 271, 273). The Charter of the City of New York and the Administrative Code of the City of New York provide for a borough president in respect of each borough and define his powers and duties. A borough president may appoint and at pleasure remove a commissioner of borough works; he may also appoint and at pleasure remove other lesser officials, subject to the provisions of the Civil Service Law. There is no provision in the Charter or the Administrative Code for the office of " Honorary Commissioner of Borough Works." Nor does it appear that the position of " Honorary Commissioner of Borough Works " is subject to the provisions of the Civil Service Law. The word " honorary " prefixed to the title of commissioner of borough works in this case can only mean without reward or compensation (*Haswell*

v. *Mayor of City of New York,* 81 N. Y. 255, 258). '' Honorary '' can have no reference to the duties or powers of the respondent; if it has, it is to the effect that the appointment is without the obligation to perform any duty. That is not so, since the appointment specifies duties and powers which are the subject of this application. For the purpose of this application, therefore, the term '' honorary '' is of no legal significance.

The only Charter provision which could possibly authorize Kreutzer's appointment is subdivision c of section 82, which empowers the borough president to appoint assistants, clerks and subordinates '' within the appropriation therefor '' who '' shall hold office * * * subject to the provisions of the civil service law.'' This language seems clearly to contemplate appointments to positions for which salaries have been appropriated and which enjoy civil service status. It does not appear to have been intended to embrace '' honorary '' positions without compensation, for which no appropriation has been made and which are not within the scope of the Civil Service Law. The very term '' honorary '', used to describe Kreutzer's office, is the clearest possible indication of its unofficial character. The right of the borough president to delegate his powers to officers or employees appointed by him extends only to those officers or employees whose appointment is authorized by subdivision c of section 82 of the Charter, viz., salaried employees constituting part of the civil service of our State. No power of delegation to an '' honorary '' appointee, for whose office no appropriation exists and whose appointment is outside the framework of the Civil Service Law, is vested in the borough president.

The nature of the office sought to be filled by the appointment herein made is not to be determined by the duties and powers assigned to the office because the borough president may delegate powers to the holder thereof from time to time (Charter, § 82, subd. b). We must, accordingly, determine the validity of the appointment as if made to the office of commissioner of borough works.

The Charter (§ 82, subd. b) limits the appointive power of the borough president to '' a commissioner of borough works ''. Thereby a borough president is confined to the appointment of one commissioner of borough works. The court will take judicial notice of the fact that prior to the appointment of the respondent herein, there was a commissioner of borough works and that he has not been removed. Consequently, the appoint-

ment of the respondent to the position of "Honorary Commissioner of Borough Works " is ineffective and void.

Assuming, however, that the respondent's appointment is valid and that " may ", as used in section 406 of the Civil Practice Act, is to be construed in its permissive sense, that section would, at most, confer the power to issue subpœnas upon the *borough president* for the purpose of enabling him to take proof as to whether to exercise his power of removal. It would not confer the power to issue subpœnas upon *Mr. Kreutzer, to whom no power of removal was delegated.* Section 406 gives the subpœna power only to a person " expressly authorized by law * * * to do any * * * act in an official capacity, in relation to which proof may be taken ". Mr. Kreutzer has not been expressly authorized by law to do any official act in relation to which proof may be taken. He has, it is true, been authorized by the borough president to conduct an investigation, but, as previously pointed out, the borough president himself has not received the power to investigate by any Charter provision or otherwise and, therefore, may not delegate any such power.

It may perhaps be argued that if the borough president himself possesses the subpœna power in connection with the proper exercise of his power to remove one of his appointees, he may delegate this power by virtue of the provisions of subdivision f of section 82 of the New York City Charter, which empower him to authorize any of his appointees to exercise any of his powers and duties. The difficulty with accepting this contention as valid is that the provisions of the Charter for delegation of the borough president's powers cannot enlarge the provisions of section 406 of the Civil Practice Act, a State-wide enactment adopted by the State Legislature, so as to extend the subpœna power to a person who is not " expressly authorized by law * * * to do any * * * act in an official capacity, in relation to which proof may be taken ".

Accordingly, the motion to quash is granted. Settle order.