Joseph A. Suozzi, J.
This is an application to vacate a subpoena served on the petitioner whereby he was commanded to appear before the County Executive of Nassau County “to be examined under oath pursuant to Sections 202, 203 and 2213 of the County Government Law of Nassau County, concerning the administration of the Department of the Sheriff of Nassau County ”.
In support of this application the Sheriff claims that the County Executive has no duty or responsibility to discharge “ concerning the administration ” of the jail and the Sheriff’s office, and that the subpoena is “an attempted usurption of power ” and “ is without precedent and without doubt is politi *243 cally motivated ’ The County Executive, in support of his action, contends that the subpoena was issued pursuant to section 2213 to the end of a better discharge of the duties and responsibilities imposed upon him by sections 202 and 203. (Nassau County Government Law [L. 1936, ch. 879, as amd.].)
The subpoena sought to be vacated is dated November 13,1962, and refers generally to an examination ‘ ‘ concerning the administration of the Department of the Sheriff ”. A letter accompanying the subpoena defines more specifically the scope and purpose of the inquiry, and sets forth the following items: (1) the jail break of May 6, 1962; (2) the dismissal of a Deputy Sheriff after the jail bre'ak because he was “ improperly prepared for his position”; (3) accusations of sodomy, extortion, selling whiskey in the jail and taking bribes from prisoners against one of the jailers; (4) discovery of a jailer asleep “ while bestial activities were occurring”; (5) the arrest of a jailer charged with drunken driving and assaulting a police officer; (6) information about the qualifications, training, background and duties of deputies, jailers and others having direct contact with the inmates of the jail; and (7) specific steps taken, if any, by the Sheriff in the reform of procedures at the jail since the jail bre'ak. The letter states further: 1 ‘ Examination of the enumerated events lead to the inescapable conclusion of ineptness, poor hiring techniques, lack of proper qualification, and general danger to the public health and. safety of the people of Nassau County * * * It is therefore incumbent upon me as Chairman of the Board of Supervisors, responsible for recommendations to the Board of Supervisors, and as the Chief Executive Officer of the County, to require your appearance before me to explain the circumstances set forth. ’ ’
The County Executive opposes the Sheriff’s application and asserts that the “ actions and accusations with respect to the Sheriff’s administration warrant understanding and explanation and possibly recommendation ”, and “ If the County Executive is to be informed and if he is to present information and recommendations to the Board of Supervisors his examination into the existing circumstances bringing about these activities is necessary.”
Before proceeding .to a determination of the issue before the court, a statement of the circumstances and background of the controversy which led to the issuance of the subpoena will be useful. This is provided by the correspondence which was exchanged between the parties prior to the issuance of the subpoena, all of which is before the court.
*244 The exchange begins with a letter of October 25,1962, wherein the County Executive invited the Sheriff to his office so that he “may familiarize [himself] with the various aspects ” of the Sheriff’s department. The Sheriff replied on the same date and, among other things, suggested that the County Executive select a date “ after the election ” for the discussion of these matters. The County Executive agreed, and set a date of November 8, 1962 in his letter of reply, which also contains a lengthy recital of the duties and responsibilities of the Sheriff and the County Executive, and their interrelationship. The Sheriff then countered with an invitation to the County Executive and the Board of Supervisors to make a tour of the Sheriff’s office and the jail, to receive an explanation of 11 all duties and functions * * * pertaining to civil work” and operations at the jail. The subpoena and the accompanying letter followed.
The interrelationship and the interdependence that exists between the County Executive, the Sheriff and other county departments has been clearly stated by the County Executive. Good government demands that there exist a spirit of co-operation and harmony among the heads of these various departments, even though they may be independent of each other. Proper government efficiency requires it. By a full familiarity with and awareness of the operations of all county departments, the County Executive obviously would be in a position to serve the public better and pass more intelligently on all matters before him. Whether or not the Legislature has granted to the County Executive the power to obtain such information by the legal process to which he has resorted under the circumstances is a matter for determination here.
The court can pass only on the power bestowed by the Legislature, and not upon the wisdom of the provisions upon which reliance is placed. The rights or wrongs of any personal or political controversy between the parties are irrelevant to the determination of the legislative intent when it enacted these provisions. (Matter of Hirshfield v. Craig, 239 N. Y. 98.)
The County Executive relies on sections 202, 203 and 2213 of the Nassau County Government Law. Section 2213 provides as follows: “ The county executive, the county comptroller, the county fire marshal, the commissioner of accounts and such members of his staff as he may designate, members of the county civil service commission and its secretary, members of the county board of assessors, the chairman of the county planning commission, the county medical examiner and his deputies and any other officers who may be designated by ordinance shall have the power to administer oaths and affirmations and to *245 compel the attendance of witnesses and the production of books and papers, and any person disobeying a valid subpoena thereof, or who wilfully refuses to make oath or affimation when requested to do so thereby, shall be guilty of a misdemeanor and shall be punished by a fine of not more than five hundred dollars or imprisonment for not more than three months, or by both such fine and imprisonment.”
The fact that until now no County Executive has asserted this power more reasonably sustains the correctness of the asumption that occasion for the use of this power would rarely arise, than as evidence that all previous County Executives have construed the statute as withholding from them this power (Matter of Hirshfield v. Craig, supra). The fact that the witness sought to be examined is an elected official makes no difference, where the power exists (Matter of Frank v. Balog, 189 Misc. 1016, affd. 272 App. Div. 941).
The County Executive by the issuance of the subpoena on the Sheriff seeks to enforce his claim that he has the power to examine into the administration of the Sheriff’s department because in his judgment this examination is necessary and related to the better discharge of the statutory duties and responsibilities imposed upon him by sections 202 and 203 of the Nassau County Grovernment Law. He relies, at least in part, on those authorities where it has been held to be well settled that the power to investigate and the power to subpoena witnesses to the end of a better discharge of their duties have been conferred upon administrative officials without successful challenge by many statutes. (Matter of Hirshfield v. Craig, supra; Dunham v. Ottinger, 243 N. Y. 423; Matter of Hirshfield v. Cook, 227 N. Y. 297; Matter of Hirshfield v. Hanley, 228 N. Y. 346; Matter of Vaccarella v. Blythe, 17 Misc 2d 307; Matter of Hertle, 120 App. Div. 717.)
However, a review of these eases discloses a difference between the statutory provisions passed on by the courts therein and the provisions to be passed upon here, which clearly distinguishes them. The difference lies in the fact that under the statutory provisions heretofore passed on, the official involved was one to whom the power or the duty to investigate was expressly conferred or imposed, and the power to subpoena was expressly conferred. To state it differently, those provisions expressly defined the purposes for which the power of subpoena was conferred. Such is not the case here. Neither in the provisions upon which the County Executive relies nor in any other provision of law which has been called to the court’s attention or which the court has discovered has the power or duty of the County *246 Executive to investigate or examine been expressly stated, nor have any of the purposes for which the power of subpoena was conferred on the County Executive been expressly defined.
It should also be noted that in the provisions which have been heretofore passed upon in the courts, the Legislature has expressly permitted the investigating official to make the decision ‘ ‘ whether the examination would be for the best interests ’ ’ of the municipality, and in such instances it has been held that “ [t]he courts are given no power to review or set aside such decision” (Matter of Hirshfield v. Craig, 239 N. Y. 98, 110). Such permission is also lacking in the statutes before us.
It cannot be said here of the language of the provisions, as was said in the Matter of Hirshfield v. Hanley (228 N. Y. 346, supra) that the language is so clear, direct and absolute as to be insusceptible of interpretation, or that when viewed in its literal sense the language does not work a result which causes an obscurity of meaning calling for judicial interpretation. It is not disputed that a motion to quash a subpoena is the proper way to test its validity (Matter of Slipyan, 208 Misc. 515, appeal dismissed 286 App. Div. 1091; Matter of Remy Sportswear, 16 Misc 2d 407). Statues relating to compelling the attendance of witnesses must be strictly construed, and the intention of the Legislature must be free from doubt (People ex rel. Webster v. Van Tassel, 64 Hun 444, affd. 135 N. Y. 638; Matter of Barnes, 204 N. Y. 108; People ex rel. City of Olean v. Western N. Y. & Pa. Traction Co., 214 N. Y. 526).
Although no instance has been called to the court’s attention, nor has the court discovered any where the power to an examination such as that sought by the subpoena herein has been implied, it is urged upon the court that this power may be implied from the express provisions of sections 202, 203 and 2213, which define the County Executive’s duties and responsibilities and his power to subpoena.
It is beyond dispute that certain powers not expressly granted may be implied. Such implied powers have been held to be (1) those necessarily arising or fairly implied from, or incident to, powers expressly granted, and (2) those which are not simply convenient but indispensable to the declared objectives and purposes of such powers. (1 Dillon, Municipal Corporations [5th ed.]; 2 McQuillin, Municipal Corporations [3d ed.]; New York Trap Rock Corp. v. Town of Clarkstown, 299 N. Y. 77.) This contention thus raises two questions for resolution here: (1) Is the power asserted by the County Executive such that it can be held to be necessarily arising or fairly implied from, or incident to powers expressly granted; and (2) is the power one *247 which is not simply convenient, but indispensable to the declared objectives and purposes of the power and duties conferred upon him?
Section 202 defines the duties of the County Executive as (1) presiding over the Board of Supervisors; (2) preparing and presenting the annual budget; (3) reporting the financial and other transactions of the county, including the reports of the several departments; and (4) presenting to the Board of Supervisors “ such other information concerning the affairs of the county and such recommendations as he may deem necessary or as the board may by resolution request.”
The examination of the subpoena as amplified by the correspondence clearly establishes that the examination sought by the County Executive concerns itself with the actual administration of the Sheriff’s department, and with charges of wrongdoing, and does not pertain to budgetary matters for 1963 or any subsequent years. It requires a strained construction to relate the subpoena in its present context to the duties of presiding over the Board of Supervisors or preparing and presenting the annual budget.
Doubtless the duty to present information on county affairs and to make recommendations to the board demands full and adequate information. Although the Sheriff has refused to meet with the County Executive at his office, he has invited the County Executive and the Board of Supervisors, prior to the issuance of the subpoena herein, to make a tour of the Sheriff’s office and the jail and to receive an explanation of all duties and functions pertaining to civil work and operations at the jail. In addition, it has not been ruled out that some of the information which the County Executive seeks is available from the Commission of Correction, which investigated the jail break, and the District Attorney, who is responsible for the investigation and prosecution of charges of wrongdoing.
The correspondence discloses that the County Executive has formulated some recommendations and reached some conclusions which suggest that at least as to these, he has had the information on which to base them. While the proposed examination may be a convenient method of obtaining further information, the court cannot find that it is an indispensable one. As a result the court cannot find that the power asserted by the County Executive here is indispensable to the duties imposed upon him by section 202. Nor is the situation presented here one where this court will imply this power of examination as being one necessarily arising or fairly implied from, or incident to the express provisions of section 202. _
*248 Section 203 provides as follows: “ Responsibility for administration; powers of appointment and removal. It shall be the duty of the county executive to supervise, direct, and control, subject to the provisions of this act, the administration of all departments of the county government. He shall appoint, except as otherwise provided in this act, subject to confirmation by the board of supervisors, the head of every county department and office and members of county boards and commissions. He may at any time remove any person so appointed; provided that in the case of members of boards and commissions appointed for definite terms, no removal shall be made until the person to be removed has been served with a notice of the reasons for his removal and given an opportunity to be heard, publicly if he desires, thereon by the county executive. The decision of the county executive shall be final. He shall also appoint without confirmation by the board of supervisors, and remove at his pleasure, the employees in his own office and such employees shall not be members of the classified service. ’ ’
The right to examine does not imply the right to direct changes in the administration of a department (Matter of Hirshfield v. Craig, 239 N. Y. 98, supra). This is not disputed and, in fact, the County Executive in his affidavit of opposition and through his counsel has made it clear that he does not claim the power of direction or control of the Sheriff’s department, and relies primarily on the duty to supervise for the assertion of the power to-examine the Sheriff.1 The word “ supervision ” is not one of precise import, and implies oversight and direction, and has been held to be synonymous with the power to direct and control (83 C. J. S., p. 900). The use of the word “ supervise ” in section 203 conjunctively with and not disjunctively from the words “ direction ” and “ control ” support a holding that the duty to “ supervise ” is synonymous with the duty to direct and control.
“ The sheriff is an elected county officer * * * He is charged with the care and maintenance of the county jail and its inmates. He serves the court’s process and executes its mandates. He is, in effect, an arm of the court.” (Enstrom v. City of New York, 258 App. Div. 672, 675.) Section 46 of the Correction Law confers on the Commission of Correction the power to investigate the administration of the county jail, and if the jail be “ unsafe, unsanitary or inadequate ”, the jail may be closed by the commission.
It has been held that the county wherein a Sheriff functions may not be held responsible for the failure of the Sheriff or his deputies to properly perform their duties, whether they acted in a civil matter (Commisso v. Meeker, 8 N Y 2d 109), or in a *249 criminal matter (Isereau v. Stone, 3 A D 2d 243). Section 5 of article IX of the Constitution of the State of New York expressly states “ the county shall never be made responsible for the acts of the sheriff. ’ ’ The same section provides that the Sheriff may be removed from office by the Governor.
Whether or not there has been wrongdoing is a matter for inquiry by the Commission of Correction, the Governor, the Grand Jury or the District Attorney (see Matter of Hirshfield v. Cook, 227 N. Y. 297; Matter of Herlands v. Sutherland, 170 Misc. 131, affd. 257 App. Div. 935, affd. 288 N. Y. 708).
In view of the provisions of the Constitution and the Correction Law, and after consideration of the authorities, the court cannot construe section 203 as imposing on the County Executive the duty of supervision, direction and control of the Sheriff’s department. Therefore, the power asserted by the County Executive cannot, in the court’s opinion, be implied from the express provisions of section 203.
Section 2213 empowers the County Executive along with other named officials, both elective and appointive, to compel the attendance of witnesses, and prescribes penalties for anyone disobeying a valid subpoena. The broad power to examine the Sheriff cannot be implied from this grant of the power of subpoena under the circumstances presented (see Matter of Costello [Kreutzer], 202 Misc. 51; Matter of Art Metal Constr. Co. v. McGoldrick, 260 App. Div. 153). The resistance of the courts toward making this implication and to extending the limits of authority expressly granted is impressively evidenced in Matter of Hirshfield v. Craig (239 N. Y. 98, 113, 114, supra) where the court was passing on the broad provisions of the New York City Charter relating to the Commissioner of Accounts, and stated:
“ It seems evident that his right to summon witnesses must be confined to proceedings in connection with those examinations which he is expressly authorized to make, i.e., examinations of accounts and methods of city or county departments ” (p. 113).
“ The subject-matter of the examination is not in any way connected with the ‘ accounts and methods ’ of any department or office no matter how broadly these words are construed, and it seems clear that if the Commissioner of Accounts has the right to summon witnesses in this proposed examination or investigation, he must have a commission to summon witnesses and compel them to testify in regard to any matters in zohich the city or any of its officers may he concerned.” (Emphasis supplied; p. 114.)
The absence of an express definition in the Nassau County Government Law of the purposes for which the subpoena power conferred by section 2213 may be used suggests a reference to *250 sections 403 and 406 of the Civil Practice Act as a useful guide as to the intent of the Legislature in the enactment of section 2213. However, from the record and the circumstances presented, the court cannot find that the attendance of the Sheriff is required ‘ ‘ at the trial or hearing of a cause or the hearing of a motion or before a referee or other person where proof # * * is required ” (Civ. Prac. Act, § 403) or for the performance by the County Executive of “ any other act in an official capacity, in relation to which proof may be taken ” (Civ. Prac. Act, § 406). (See Matter of Costello [Kreutzer], supra.)
Any interpretation which construes the provisions herein as conferring upon the County Executive the broad power asserted by him against the Sheriff, could result in the assertion that similarly broad powers are conferred on the other officials named in section 2213. No one can seriously contend that the Legislature intended the unlikely, but conceivably possible result that each of these named officials could examine the County Executive and each other.
Experience with the Nassau County Government Law and its provisions and the events which have transpired since their enactment may have pointed up the importance and usefulness of lodging this broad power in the County Executive. However, this court must be concerned with the intent of the Legislature at the time of the enactment of the provisions and not with what the Legislature ought to have done or should do now. Nothing in the language of the provisions themselves, nor the history of the enactment of these provisions or any other provisions of the Nassau County Government Law, nor the holding of any authority called to the court’s attention or which the court has discovered, lends any support to a conclusion that it was the intention of the Legislature to bestow this power on the County Executive. Had such been the intent of the Legislature, certainly the language would be more direct, clear and absolute.
Accordingly, and for all these reasons, the court finds that the subpoena issued by the County Executive on the Sheriff must be vacated, and the petition of the Sheriff must be granted.