In the Matter of the Application of EUGENE F. MCLAUGHLIN, as Receiver of Taxes of the City of New York, Petitioner, for an Order Vacating a Writ of Attachment Issued to the Sheriff of the County of New York on Behalf of DAVID HIRSHFIELD, as Commissioner of Accounts of the City of New York, Respondent.

Supreme Court, New York Special Term, April 6, 1925.

Municipal corporations — officers — motion to vacate subpœna and writ of attachment for petitioner's failure to appear in response to said subpœna issued by commissioner of accounts of city of New York — said commissioner had power to compel attendance of petitioner on examination of municipal departmental accounts under provisions of Greater New York charter, § 119 — Civil Practice Act, §§ 406, 407, limiting power to issue subpœnaes to department heads does not deprive said commissioner of power to examine into accounts of municipality — local act, passed pursuant to City Home Rule Law (Laws of 1924, chap. 363), making office of commissioner of accounts administrative department, does not create new office — local act permitting said commissioner to compel attendance of county officers within city of New York does not contravene City Home Rule Law, § 21, subd. 9 — said local act, providing for mandatory referendum, is not inoperative within provisions of Home Rule Law, § 15 — commissioner of accounts proper person to issue subpœna within Civil Practice Act, § 406 — attachment should issue unless petitioner submits to examination.

The commissioner of accounts of the city of New York has power to compel the attendance of witnesses in an examination upon the accounts and methods of

the departments and offices of the city of New York, and of the counties within it, under section 119 of the Greater New York charter, and the power of said commissioner to compel the attendance of such witnesses must be read in connection with sections 406 and 407 of the Civil Practice Act.

Section 407 of the Civil Practice Act, which prohibits the issuance of a subpœna " by any commissioner in a city, who is not the head of any department," does not deprive the commissioner of accounts of the city of New York of the power to examine into the accounts of the said municipality, though the charter of said city does not specifically designate the office of the commissioner of accounts as an administrative department, since the provisions of a local act, passed under the authority of the City Home Rule Law (Laws of 1924, chap. 363), makes said office an administrative department.

The local act passed pursuant to the City Home Rule Law (Laws of 1924, chap. 363) making the office of commissioner of accounts an administrative department does not create a new city department, where it provides that the said office " as now constituted by section one hundred and nineteen of the Greater New York charter, shall be an administrative department of the city of New York, to be known as the department of investigation and accounts," and the only apparent purpose in enacting the local act was to place the said office in the class of administrative departments with a view to having the provisions of the Greater New York charter applicable to administrative departments in general also apply to the office of commissioner of accounts. Nor did said local act enlarge the powers of the former office as provided for in section 119 of the Greater New York charter, but merely made the office an administrative department with a new name and without changing the name of the head of the department or its incumbent.

The provision of the said local act which permits the commissioner of accounts to compel the attendance of county officers within the metropolitan area does not contravene subdivision 9 of section 21 of the City Home Rule Law since the commissioner's power to examine into the affairs of county officers in the city of New York is specifically permitted by section 119 of the Greater New York charter, which right is not impaired by section 407 of the Civil Practice Act. Nor is the local act inoperative because it requires a mandatory referendum under section 15 of the Home Rule Law.

The commissioner of accounts is the proper person under section 119 of the Greater New York charter to make the examination provided for therein and he is the proper person to issue a subpœna within the provisions of section 406 of the Civil Practice Act.

Accordingly, petitioner's motion to vacate a subpœna issued by the commissioner of accounts of the city of New York, together with a writ of attachment, should be denied and provision made for execution of the attachment unless said petitioner submits to the proposed examination.

MOTION by the receiver of taxes of the city of New York to vacate a subpœna issued by the commissioner of accounts and to vacate a writ of attachment issued by reason of failure of said receiver to obey said subpœna.

*Rorke & Kane* [*Alexander I. Rorke* of counsel], for the petitioner.

*George P. Nicholson, Corporation Counsel* [*Arthur J. W. Hilly* and *Russell Lord Tarbox* of counsel], for David Hirshfield, commissioner of accounts.

Levy, J.:

Petitioner, receiver of taxes of the city of New York, seeks to vacate a subpœna issued by David Hirshfield, as commissioner of accounts of the city of New York, and to vacate a writ of attachment issued by reason of his failure to obey the subpœna. He argues that the commissioner of accounts has been deprived by a recent amendment of the Civil Practice Act (Laws of 1924, chap. 216) of the power of compelling the attendance of witnesses; that the local law passed to give him this power is invalid, and even if it is valid that David Hirshfield has not properly qualified for his office under it, and the subpœna issued by him is void in law and defective in form.

The power of the commissioner of accounts to compel the attendance of witnesses in order to examine them upon the accounts and methods of the departments and offices of the city of New York and of the counties within it, rests upon section 119 of the Greater New York charter, and has been construed by the Court of Appeals to cover the power to examine the accounts and methods of the department of finance, under which the petitioner is employed, as well as the examination of other city and county departments and offices. (*Matter of Hirshfield* v. *Craig*, 239 N. Y. 98.)

The power of the commissioner to compel the attendance of the petitioner must be read in connection with sections 406 and 407 of the Civil Practice Act. (*Matter of Foster*, 139 App. Div. 769, 774.) Section 406 authorizes the issue of a subpœna by and under the hand of the person authorized by law to hear and determine a matter in relation to which proof must be taken, and the issue by a judge of a warrant to compel the attendance of a defaulting witness.

In 1924 section 407 of the Civil Practice Act was amended so as to make the provisions of section 406 of the Civil Practice Act inapplicable *to a subpœna issued by any commissioner in a city, who is not the head of any department.* This amendment, it is contended, deprived the commissioner of accounts of his power to compel the attendance of witnesses, because the office of the commissioner of accounts is not one of the departments enumerated in section 96 of the charter, nor is he one of the heads of departments enumerated in sections 97 to 110 of the same instrument. This argument, which only requires brief mention here, because it is more fully dwelt on later in another connection, is posited upon the erroneous assumption that the departments and heads of departments referred to in sections 96 to 110 of the charter are but all the heads of departments the Legislature had in mind in amending section 407 of the Civil Practice Act. As a matter of fact, the

heads mentioned in these sections are only the heads of *administrative* departments. If the Legislature had intended to deprive commissioners who were not heads of *administrative* departments of the effective power of subpœna, it certainly would have said so. But by its language it deprived those commissioners of power who were not heads of *any* department. The fact that the office of the commissioner of accounts is not specifically called a department in the charter does not deprive it of its character as such, although it is true that it does not, under the charter itself, belong to the special class of administrative departments. Moreover, as the Legislature did not specifically repeal section 119 of the charter, it cannot be assumed that it intended to abolish the office of commissioner of accounts or to deprive the incumbent of his power to examine into the accounts and methods of city and county departments of the government. And as this section of the charter recognizes the necessity of ascertaining facts in connection with these examinations by means of the power to compel the attendance of witnesses, it is idle to assume that the Legislature intended to deprive him of the one power by which he could fully ascertain the facts in the performance of the duties prescribed for his office.

However, in order to avoid any question on this point, the municipal assembly, under the authority granted to it by chapter 363 of the Laws of 1924, known as the City Home Rule Law, passed a local law making the office of commissioner of accounts an administrative department. In doing so it acted on the assumption that the Legislature in amending section 407 of the Civil Practice Act might have intended to deprive commissioners who were not heads of *administrative* departments of the necessary power of subpœna; and accordingly it passed a local law reading as follows:

" A local law making the office of the commissioner of accounts a department of the city and providing for the head of such department.

" *Be it enacted by the Municipal Assembly of the City of New York as follows:*

" Section 1. The office of the commissioner of accounts as now constituted by section one hundred and nineteen of the Greater New York charter, shall be an administrative department of the city of New York, to be known as the department of investigation and accounts, of which the officer known as commissioner of accounts and provided for by said section, who may now or hereafter hold such office, shall be the head.

" § 2. Section 119 of the Greater New York charter, as re-enacted

49

by chapter 466 of the Laws of 1901 as amended by chapter 517 of the Laws of 1916, shall be deemed superseded to the extent prescribed by this local law.

" § 3. This law shall take effect immediately."

This law, even if valid, it is contended by the petitioner, created a new city department; that the commissioner did not properly qualify under it by receiving a new appointment from the mayor and filing his oath of office, and that he is, therefore, not properly acting under it. The claim is also urged that the local law is of no effect because the conditions for the validity of such a law under the provisions of the City Home Rule Law have not been adequately met.

Taking up the first contention, was any new department created by the municipal assembly in enacting this local statute?

It provides that the office of commissioner of accounts *as now constituted* by section 119 of the Greater New York charter, shall be an administrative department. The words in italics would indicate that there was no intent to create a new department as such or to change the organization of the then existing office, but to put it in the class of *administrative* departments, so that the sections of the Greater New York charter applicable to administrative departments in general, such as sections 111 and 118, should also apply to the office of commissioner of accounts.

This is made clearer by the fact that section 96, which enumerates the administrative departments of the city, has been held not to be inclusive of *all* the departments of the city, but only of the *administrative* departments; and accordingly under this ruling it has been held that the board of aldermen is a department of the city government within the meaning of section 1543 of the charter (*People ex rel. Martin* v. *Scully,* 56 App. Div. 302), although it is nowhere in the charter itself specifically referred to as a department.

When the charter enumerated the administrative city departments in section 96, it excluded two executive city bodies from the list, the commissioner of accounts and the civil service commission, both of which were invested with the power of investigation and subpoena, one which the administrative departments enumerated in section 96 do not possess except such limited powers as in the case of the fire department. Both of these bodies are departments of the city government in the common meaning of the term with quasi-judicial authority in addition to the ministerial functions, and hence in a class with broader powers than the departments enumerated in the section under discussion. Accordingly, while the commissioner of accounts prior to the passage of the local law was not the head of an administrative department, he was

none the less the head of a department. He certainly was not the head of a mere bureau, because in the classification of the ministerial officers of the government, a bureau is understood to be a division of a department. (Bouvier Law Dict.)

The office of the commissioner of accounts is not a subdivision of any other department, but comes clearly within the definition of the term "department" in Murray's New English Dictionary, as "one of the separate divisions or branches of state or municipal administration."

While the title of the local law purports to make the office a *department* of the city, the body of the law clearly indicates that the intention was to make it an *administrative* department.

It follows, therefore, that when the office of commissioner of accounts was put in the category of *administrative* departments to be known as the department of investigation and accounts, two results were accomplished: *First*, all sections of the charter which refer either directly or by implication to heads of *administrative* departments became applicable to the office; and *secondly*, the name of the office was changed to department of investigation and accounts. The change of name did not in any way affect the organization of the office "as now constituted," meaning *then* of course, and it was tantamount to the effect of the change of name of the department of bridges to the department of plant and structures by section 3 of chapter 528 of the Laws of 1916, which created no new office, but merely changed the name of the incumbent in office from commissioner of bridges to commissioner of plant and structures.

The municipal assembly in passing the local law did not change the title of the head of the newly-named department, but provided that the officer *known as commissioner of accounts* who may *now* or hereafter hold such office should be the head. There is no provision here that he should be called the commissioner of *investigation and accounts*. Heads of departments are not necessarily known by the name of the department. Thus the head of the law department is the corporation counsel, and the head of the department of finance is the comptroller. Here the local law distinctly says that the officer *known* as the commissioner of accounts shall be the head. This refers to his name both before and after the passage of the law. At the same time some question might arise as to whether the municipal assembly did not intend to enlarge the duties of the commissioner of accounts by giving him broad powers of investigation in excess of those given by section 119 of the charter, which the Court of Appeals in the recent case of *Matter of Hirshfield* v. *Craig* (*supra,* 112), has held to be

limited to an examination of the *accounts and methods* of some department or office. The term *investigation* added to the title of the office does not extend its function in the absence of express language authorizing such enlargement. It is synonymous with the term *examination.* In fact, the very section 119 speaks of an " investigation authorized by this section; " and such investigation can, therefore, be no broader under the new local enactment than as defined in such section, as interpreted by the Court of Appeals in the *Hirshfield* case, cited.

True it is that the committee on local laws of the aldermanic branch of the municipal assembly in reporting favorably upon the bill, recommended that the commissioner should be invested with broad power of inquiry. But if we examine the very next paragraph of its report, we find that it had in mind the restoration of the power of subpœna which it mistakenly thought the commissioner had been denied by the amendment to section 407 of the Civil Practice Act, and not the expansion of powers in a broadly inquisitorial way.

The conclusion is, therefore, inevitable that the municipal assembly did not create any *new* office, or *enlarge* the powers of the old office, but merely made the office an *administrative department* with a *new name*, without changing the name of its head or changing the present incumbent. Section 118 of the charter, giving the mayor power to appoint heads of departments, is not affected by the local law, except to the extent that the provisions of this section now apply to the office, because the commissioner of accounts has been placed among the *administrative* heads of departments to whom the provisions of sections 118 and 1543 also apply, whereas formerly the provisions of section 119 specifically applied to his appointment and removal. This is the meaning of section 2 of the local law in saying that section 119 of the charter has been *superseded* to the extent prescribed by this local law. The word *superseded* adds a certain amount of obscurity in the interpretation of the law. But the apparent intent was to engraft the provision making the present office of the commissioner an administrative department and continuing the present incumbent upon section 119, this section being specified because it deals fully with the office of commissioner of accounts. Perhaps the result might have been accomplished more artistically by adding his office to the list of administrative departments in section 96 of the charter. But the failure to name this department in said section would not destroy the effect of naming it in some other section, and it is so named in section 119 as a result of the local law. The latter, therefore, *adds* to the section rather than super-

sedes anything, except possibly that it merges the specific authority of the mayor to appoint and remove at pleasure a commissioner of accounts, as given in the first sentence, in the general authority to appoint and remove heads of departments provided by section 118.

It follows, therefore, that the commissioner of accounts in this wise being named as the head of the department of investigation and accounts, did not become the holder of a new office, did not require a new or additional appointment by the mayor, and did not have to file any new oath.

The further objection has been made that the local law is ineffective because it is in contravention of the City Home Rule Law in that it applies to or affects provisions of law relating to the property, affairs or government of a county or counties, it being said that since the commissioner of accounts has the power to compel the attendance of county officers, any enlargement of his powers affects the affairs of the government of a county, and is illegal, under subdivision 9 of section 21 of the said City Home Rule Law. This is not so, because the commissioner's power to examine into the affairs of county officers within the city is specifically provided for in section 119. This right to investigate these affairs was not impaired by any interpretation of section 407 of the Civil Practice Act, as amended. The right to compel attendance of witnesses, if lost by this section, and restored by the local law, is not a matter which affects the property, affairs and government of a county within the city of New York, just as the right of the commissioner to examine into the affairs of the comptroller's office does not affect the affairs and the independence of the department of finance. (*Matter of Hirshfield* v. *Craig, supra,* 108, 109.) The right of the commissioner of accounts to make an effective examination of county affairs within the limits of the authority of section 119 of the charter, therefore, in no wise contravenes the Home Rule Law.

Nor is there any force in the objection that the local law is inoperative because it requires a mandatory referendum under section 15 of the Home Rule Law, where the powers of an elective city officer are abolished, transferred or curtailed. This seeming grievance has been disposed of by the Court of Appeals which has ruled, as already pointed out, that the power of this sort of examination is not a curtailment of the independence of an elected official.

As regards the form of subpœna, in respect to the sufficiency of which a question has been raised, the commissioner of accounts, as such, is the person authorized by section 119 of the charter to make the examination provided therein. His title not having

been changed by the local law, he is still the proper person to issue the subpœna, he being the "*person* * * * expressly authorized by law to hear, try or determine a matter" (Civ. Prac. Act, § 406), not the department of which he is the head. Hence, both under the original statute and under the local law, it is not the office or department which is vested with the duty of issuing subpœnas, but the commissioner himself. The subpœna in the case at bar was, therefore, sufficient in form.

It necessarily follows that the motion must be denied. Let formal order be submitted on two days' notice, which shall indicate this result and, in addition, proper provision for the execution of the attachment in the hands of the sheriff, unless the petitioner submits to examination at a time and place to be fixed by the commissioner.