In the Matter of the Application of WILLIAM B. HERLANDS, as Commissioner of Investigation of the City of New York, Petitioner, for a Warrant to Commit KENNETH SUTHERLAND, a Witness, Respondent.

Supreme Court, Special Term, New York County, January 18, 1939.

*William C. Chanler, Corporation Counsel [Samuel J. Silverman of counsel], for the petitioner.*

*Lewis, Marks & Kanter [Oscar A. Lewis, Lloyd B. Kanter, Sidney Squire and Joseph Fine of counsel], for the respondent.*

STEUER, J. The petitioner, who is the commissioner of investigation of the city of New York, in November, 1938, determined to conduct a survey of the methods and procedures of the clerks of the Supreme Court in the county of Kings. He subpœnaed the respondent, who is the general clerk of that court. Respondent put the commissioner in touch with the personnel committee of the Board of Justices of Kings County, which body, through its chairman, informed petitioner that it believed he had no authority to conduct any such survey. Respondent appeared for examination but refused to answer any questions, pursuant to instructions of the Board of Justices, on the ground previously stated. This motion is to punish for contempt and is really for the purpose of testing the commissioner's right to examine as he proposes.

Petitioner derives his powers from section 803 of the New York City Charter, which provides:

" The Commissioner:

" 1. Shall make any investigation directed by the mayor or the council.

" 2. Is authorized and empowered to make any study or investigation which in his opinion may be in the best interests of the city,

including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency."

An " agency " is defined in the charter, section 981, as " 2. The term ' agency ' shall mean a city, county, borough or other office, position, department, division, bureau, board or commission, or a corporation, institution or agency of government, the expenses of which are paid in whole or in part from the city treasury."

The clerks' salaries are paid from the city treasury. The petitioner, therefore, claims he is empowered to conduct the examination because it seeks information to which he is entitled in regard to an agency, and that even if it does not, the power given does not limit him to such examination but only to one which he deems to be in the best interests of the city. Attention is directed to the former proposition. Petitioner seeks to examine into the methods of the Supreme Court. His expressed limitations on the scope of his examination do not appear to be relevant. He says that he does not seek to inquire about the handling of litigation nor decisions of the court or any judicial act. He does not deny power to do so, so that, as far as appears, his failure to inquire on these subjects may be his present lack of official interest in them. It is impossible to determine just what he does wish to know. The clerks of the Supreme Court are concerned almost exclusively with the handling of litigation. Their duties and the purpose of their position is to facilitate and make orderly the functioning of judicial process. They have no other office. So that, no matter how styled, this examination must be into how the Supreme Court performs.

It may be assumed that the intention of section 981, subdivision 2, of the charter, quoted above, is to include in the enumeration of governmental bodies every means by which any branch of government is conducted. It is likewise clear that a limitation was intended as to what bodies, classifying them by territorial jurisdiction, were included. The offices described are " city, county and borough," all plainly connected with the affairs of the city. Assuming that the words " agency of government " include courts, the Supreme Court is an agency which covers the entire State. Its officers function regularly in geographical divisions which are greater than city, county or borough and they may be, and frequently are, assigned to any part of the State. It is quite clear that its justices are State officers. (Public Officers Law, § 2.) If it had been desired to give investigatory powers over State institutions, it would have been simple to include them expressly. It is argued that the words " or other agency  *  *  *  the expenses of which are paid in whole or in part from the city treasury," mean State agencies. Even if the rule of *ejusdem generis* were

to be entirely overlooked, the extraordinary results of such a construction would defeat its adoption. As pointed out above, it would permit inquiry into every act of the Supreme Court, performed not only in the city, but throughout the State. Certain expenses of the Attorney-General are paid from the city treasury. It cannot be urged successfully that this gives petitioner the right to make a study of the Attorney-General's office. While petitioner has asserted no such powers, his interpretation of the powers given him necessarily implies their existence. The power is given to examine *the agency*, not that branch of it which functions within the city limits. If it is claimed that the latter is implied, the restriction is without support in the text. The only other restriction which would give the section a feasible construction, namely, that State agencies are not included, finds support in the language of the charter from the failure to enumerate State agencies while those of other subdivisions are included.

The question may properly be asked, to what bodies does the word " other " apply in the charter? If it does not apply to State officers, other officials are expressly provided for. The answer is to be found in certain units which perform State functions and which, either by delegation of authority or other means, have come to have definite connection with the city. Under the former charter the right to examine these bodies was seriously questioned. (*Matter of Hirshfield* v. *Cook*, 227 N. Y. 297.) The designation, " other " bodies, is appropriate to include these agencies.

Petitioner's second argument is that the only limitation on his power to inquire is his own discretion. It is true that where the right exists, its exercise is within his sole discretion. (*Matter of Hirshfield* v. *Craig*, 239 N. Y. 98.) A literal interpretation of the charter would reveal no limit whatsoever to the field of petitioner's possible inquiry. This is because it is worded not to confine his activity to the enumerated subjects of inquiry. The true interpretation of such a grant of power is that it embraces subjects similar to and of the same general nature as those enumerated to the end that inquiry intended, but not expressly mentioned, should not be cut off. Such a grant cannot add to the agencies subject to examination.

Respondent claims that if the charter confers the powers claimed by the petitioner, it contravenes the constitutional mandate that it be " not inconsistent with the Constitution and the laws of the State." (Const. art. 12, § 3.) The view above expressed renders discussion on this point unnecessary.

Motion denied.