In the Matter of the Application of ALFRED E. SMITH, JR., and Others, Petitioners, for an Order Adjudging PAUL J. KERN, Individually and as President of the Municipal Civil Service Commission of the City of New York, Respondent, Guilty of Contempt of Said Committee for Disobedience of Subpœna Heretofore Issued by Said Committee, Dated September 27, 1940.*

Supreme Cou t, Special Term, New York County, November 16, 1940.

*Emil K. Ellis [Daniel A. Weber* of counsel], for the petitioners.

*William C. Chanler,* Corporation Counsel [*Robert H. Schaffer, Oscar L. Tucker* and *Denis B. Sullivan* of counsel], for the respondent.

McLAUGHLIN, J.   This motion is to punish the president of the civil service commission for contempt in refusing to be sworn and testify before a subcommittee of a special committee of the city council of the city of New York.   He had been served with a subpœna dated September 27, 1940.   His refusal to be sworn as a witness resulted in this application, pursuant to the provisions of section 406 of the Civil Practice Act.   The facts are not in dispute.   There was an original resolution of the city council

---

* Affd., 260 App. Div. 1003.

passed on May 7, 1940, authorizing and directing the investigation, setting forth alleged charges and adding that in case they were sustained " the Mayor be immediately petitioned for the removal of such person or persons responsible." On September 24, 1940, the city council passed a resolution to have the examination of witnesses taken before a subcommittee of one. A portion of the resolution is as follows:

" Further resolved that each member of the said committee be deemed and is hereby appointed a sub-committee of one, such sub-committee being hereby authorized to attend, examine and take the testimony under oath of witnesses at private examinations during the course of said investigation, and at continuances thereof, in preparation for public hearings. The presence of any such sub-committee at any such examination shall be deemed the presence of the said Committee or a quorum thereof, except, however, that such sub-committee shall have no power to punish for contempt or to take any other action except to note defaults, if any, in attendance of witnesses, grant or refuse continuances and to report or make recommendations to the Committee as a whole."

The only matters for determination are the points raised by the respondent in resisting the efforts of the committee to have him testify. In opposition to this motion it is urged that the subpœna is void since the Legislature has set up a complete system for the administration of the civil service system and that there is no authority in the council to investigate the civil service commission. That claim may be proper in so far as it relates to any interference with the merit system itself. Such an investigation would not be part of the council's functions. But beyond that, the city council has the right to legislate upon any number of matters affecting the health, safety and welfare of civil service employees. Then, too, under the New York City Charter, it has the right to initiate a referendum seeking to change the membership of the municipal civil service commission. With such powers existing in the council, it is evident that the investigation is properly authorized and that the subpœna is valid and must be obeyed unless the several points urged by the respondent have merit.

The respondent urges that a single member of the special committee appointed by the city council to conduct the investigation may not exercise the powers conferred upon the whole committee, although the council itself expressly vested each member of the committee with the authority of the entire committee. In considering this claim it may be said that section 43 of the Charter expressly authorizes the council from time to time to appoint

a special committee to investigate any matters relating to the property, affairs or government of the city or of any county within the city. The respondent concedes that the council could have authorized the appointment of a committee composed of a single member. He contends, however, that the council had no right or power to adopt a resolution authorizing each member of the committee to act as a *subcommittee of one* for the purpose of examining witnesses during the course of an investigation in preparation for public hearings. He urges that section 43 should be read together with section 899 of the Charter which provides that whenever any act is authorized to be done by any board or other body, the act of the majority of the board or other body shall be deemed an act of the entire board or body and that a majority of the members of any board or body shall constitute a quorum thereof. Section 899 was, however, clearly intended only to cover situations where, but for that section, confusion might result as to the number of members of a board or body necessary to constitute a quorum and as to the number necessary to act on behalf of the board or body. The section, therefore, has no application to a case such as this which raises a wholly different question, viz., the power of the city council itself to authorize action by a subcommittee of one. Having the power in the first instance to authorize an investigation by a committee of one, it follows that the council possessed the power to authorize a subcommittee of one to conduct hearings in aid of such investigation. In *Matter of Gordon* (141 Misc. 635) Mr. Justice Glennon held that the State Legislature had the power to authorize a subcommittee of a single member to conduct an investigation into the affairs of the city of New York. In *Matter of Leach* (197 App. Div. 702) an investigation by a subcommittee of one was held to be invalid only because the language negatived authority to appoint a subcommittee *of one*. The Court of Appeals in affirming (232 N. Y. 600) did so solely on the ground that " the joint resolution did not authorize the appointment of a sub-committee of one member." In the instant case the amendatory resolution adopted on September 24, 1940, expressly authorized the examination of witnesses by a subcommittee of one. There is nothing in the language of section 43 of the Charter to indicate an attempt to prohibit the council from adopting such a resolution. This objection interposed by the respondent is, therefore, overruled.

There is no merit to the objection that private hearings may not legally be held. The only authority on the subject which is referred to in the briefs submitted by both sides is *Matter of Leach* (*supra*) in which three of the justices of the Appellate Division

of this department were of the opinion that a legislative investigating committee had no right to examine witnesses at private hearings. In affirming, the Court of Appeals did not pass upon or even mention this phase of the case. *Matter of Leach (supra)* would seem, however, to have no application to the instant case on this point since section 803 of the Charter expressly authorizes the commissioner of investigation, if directed to make an investigation by the mayor or by the council, or if he decides of his own accord to make an investigation, to examine witnesses at private hearings. It cannot be said that the framers of the Charter could have intended to deny to the city council itself the power to examine witnesses in private which they expressly conferred upon the commissioner of investigation. Recognizing the importance of secrecy to the success of an investigation, the State Legislature has on numerous occasions in the recent past authorized investigating committees to hold private hearings. The provision of section 30 of the Charter that the council " shall sit with open doors " manifestly refers only to legislative sessions of the council and not to fact-finding investigations conducted by committees of the council at which no legislative action whatsoever is taken.

It would seem that the easiest way to defeat or circumvent an investigation would be to compel an open hearing of each and every step in the investigation. This could never have been intended for if it were necessary to hold all hearings of an investigation in public the proceedings would be so hampered as to practically defeat the purpose of any investigation. To have an investigation under those circumstances would necessarily be a waste of public funds. Moreover, there is another basic reason why the preliminary investigation by the subcommittee should be private. Often, wild and reckless charges, without foundation, are made, sometimes involving public officials who are guiltless of wrongdoing. These baseless charges are not to be acted upon, and surely they should not be aired in public to the detriment of the faithful servants of the city. Public officials need not fear any private investigation, particularly where the officials will have the opportunity of a public hearing before the committee. The advance made in public investigations in recent years would be thrown back a quarter of a century if the respondent's contention were sustained. So zealous were the people to see to it that public officials testified at the secret hearings of grand juries that the Constitution was amended to provide that these officials should forfeit their office if they did not sign a waiver of immunity. (State Const. art. 1, § 6; *Canteline* v. *McClellan*, 282 N. Y. 166.) Free speech is not in any way hampered or interfered with by

this investigation as the committee has stated that the respondent would be accorded the opportunity of testifying at a public hearing before the full committee. Reasonable preparation by the means of the examination of witnesses in private under oath is not only desirable but it is essential to the orderly and proper conduct of an investigation. Surely the local legislative body must have that power when the commissioner of accounts, its agent in investigations, has it. The contention that the respondent may not legally be examined in private is overruled.

The next claim of the respondent to be considered is that the resolution of the city council authorizing the investigation was beyond its power, since the purpose of the inquiry stated in the resolution was not to bring about remedial legislation, but solely to lay the foundation for a petition to the mayor by the council, calling for the removal of administrative officials.

Without taking into consideration the provisions of the Charter, there might be some doubt as to the power of the city council to hold an investigation which did not have as part of the resolution some appropriate legislative action to be taken as a result of any disclosures. (*People ex rel. McDonald* v. *Keeler*, 99 N. Y. 463, 486; *Kilbourne* v. *Thompson*, 103 U. S. 168; *McGrain* v. *Daugherty*, 273 id. 135; *People ex rel. Sabold* v. *Webb*, 5 N. Y. Supp. 855.) If the resolution in this case had been silent, the investigation would be proper because the council undoubtedly possesses the power to take action by adopting appropriate remedial legislation. Here, however, the resolution provided for action in the form of a petition to the mayor for removal. Such a right to petition does not require the action of the city council as such, but is something that may be exercised by any individual citizen.

It would thus appear that, without any other charter provision, there might be some question as to whether such a resolution would sustain this investigation. However, in this situation there is an express charter provision which authorizes the investigation, irrespective of the wording of the resolution. (N. Y. City Charter, § 43.) Any matters relating to the property, affairs or government of the city may be inquired into. The statutory authority for this investigation does not need any particular wording in the resolution. Where there is an express provision which confers upon a legislative body the power of investigation, it has the power to authorize an investigation, as here, of the affairs of the municipal civil service commission with the sole restriction that the investigation does not in any way violate the Civil Service Law. Certainly the removal of any individual commissioner or commissioners could not violate that law or the provisions of the State Constitution.

The motion is granted. The respondent may purge himself of contempt, however, by appearing for the purpose of being sworn and testifying before the subcommittee within ten days after the service of notice of entry of the order to be entered herein. Settle order.