In the Matter of the Application of EMIL K. ELLIS, Petitioner, to Quash and Vacate Certain Subpœnas Duces Tecum Served upon STERLING NATIONAL BANK & TRUST COMPANY and CHASE NATIONAL BANK.

COMMISSIONER OF INVESTIGATION OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Special Term. New York County, May 29, 1941.

*Jonas Ellis* [*Jonas Ellis, Louis Gruss* and *Abraham J. Heller* of counsel], for the petitioner.

*William C. Chanler, Corporation Counsel* [*Jeremiah M. Evarts, Louis M. Weintraub, M. Camper O' Neal, Oscar L. Tucker* and *George G. Gallantz* of counsel], for the respondent.

WALTER, J.   On April 10, 1941, the commissioner of investigation of the city of New York caused to be served upon two banks two subpœnas *duces tecum* commanding them to appear before him and be examined in the matter of " an executive inquiry," which was not therein described or identified otherwise than as being " an investigation now being conducted " before said commissioner pursuant to chapter 34 of the New York City Charter, and to bring and produce a copy of the signature card of a designated account, all correspondence and written agreements relating

thereto, a transcript thereof from January 1, 1935, to date, a copy of all deposit tickets during said period, and photostatic copy of recordak film of all checks cleared through the account during said period. In one subpœna the account designated was that of Emil K. Ellis, Special. In the other the account designated was that of Emil K. Ellis, Trustee. Said Emil K. Ellis now makes this motion to vacate said subpœnas.

Ellis is an attorney at law engaged in practicing as such, and it does not appear that he is or ever was a public official of any kind or an employee of or otherwise connected with the city or any department or agency thereof, or ever had any business or professional relations with the city or any department or agency or official thereof, except that since May, 1940, he has been and is now acting as counsel for a committee of the city council which has been appointed by it to " examine into the affairs and conduct " of the municipal civil service commission.

No order or resolution defining the scope or purpose of this so-called " executive inquiry " has been presented or is claimed to be in existence. In his affidavit in opposition to the motion the commissioner says that in the years 1934 to 1937 Ellis was connected with and received money from a membership corporation organized under the laws of this State, called National Conference on Legalizing Lotteries, Inc., and that he desires to investigate (1) Ellis' integrity and qualifications to act as counsel to the councilmanic committee, (2) the connection, if any, of the police department with that " lottery organization," and (3) whether any " municipal legislator or legislative employee was the beneficiary of " any part ' of the money which Ellis received from that organization.

By section 803 of the New York City Charter, the commissioner is authorized to make " any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency "— meaning any agency of the city as defined in section 981 of the New York City Charter. But despite the generality of that language I apprehend that no one doubts that some limitations are implied. If, for example, the commissioner should be of the opinion that it is in the best interests of the city that he investigate the density of the population of China, or the state of health of cattle in the Argentine, I apprehend that a taxpayer could enjoin a use of city funds for such investigation. The commissioner doubtless is of the opinion that it is in the best interests of the city that all its citizens lead moral and upright lives, but I apprehend that not even he would

suggest that he, therefore, may investigate the private lives and the personal financial transactions of all or any of such citizens. The insertion of the words " but not limited to " does not render meaningless the words " the affairs, functions, accounts, methods, personnel or efficiency of any agency." Those words are still illustrative of the type of investigation the commissioner is authorized to conduct. (*Matter of Herlands* v. *Sutherland,* 170 Misc. 131, 133; affd., 257 App. Div. 935.) The intent doubtless was to give him broader powers than were possessed by the commissioner of accounts under the old Charter by removing the limitation therein to examinations of " accounts and methods " (see *Matter of Hirshfield* v. *Craig,* 239 N. Y. 98), but the commissioner is still an administrative officer of the executive branch of the city government, and the investigations he is authorized to make are limited to such as have a legitimate and reasonable relation to the operation of the executive branch of that government. He has not been made the rolled-up embodiment of the grand jury, the district attorney, the police department, and the disciplinary powers of the Appellate Division over attorneys at law.

The power of Legislatures to make investigations is limited to such investigations as are in fact auxiliary to and in aid of the legislative function, and does not extend to general investigations into private affairs of citizens. (*Kilbourn* v. *Thompson,* 103 U. S. 168, 190; *McGrain* v. *Daugherty,* 273 id. 135, 170, 173, 174, 176, 178; *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463, 478, 482, 485; *Matter of Barnes,* 204 id. 108, 119; *Matter of Joint Legislative Committee* [*Hendley*], 285 id. 1, 8, 10.) The power of the Attorney-General to make investigations under the so-called Martin Act, despite the generality of the language of the statute conferring the power, is limited to investigations having a reasonable relation to action to be taken by him under the authority of that statute, and is not a commission " to embark upon any roving course for the purpose of generally prying into the affairs of any person." (*Dunham* v. *Ottinger,* 243 N. Y. 423, 433; *Carlisle* v. *Bennett,* 268 id. 212, 217, 218.) The power of the Appellate Division to order a general inquiry into the conduct of members of the bar was upheld upon the ground that such inquiry was in aid of its disciplinary powers over such members as officers of the court. (*People ex rel. Karlin* v. *Culkin,* 248 N. Y. 465.) The power of the city council to carry on the investigation in which Mr. Ellis is now acting as counsel to its committee was sustained upon the ground that it bears a reasonable relation to action which the council may desire to take in exercise of its legislative powers under the Charter. (*Matter of Smith* v. *Kern,* 175 Misc. 937, 938.) The powers of

investigation conferred by Congress upon the Federal Trade Commission have been held to be limited to the obtaining of evidence relevant to some action to be taken by it under its regulatory powers. (*Federal Trade Commission* v. *American Tobacco Co.*, 264 U. S. 298.) The powers of investigation conferred upon the Securities Exchange Commission have been held to be similarly limited. (*Jones* v. *Securities & Exchange Commission*, 298 U. S. 1, 25–28.) In short, the powers of all inquisitorial bodies which have come to my attention are subject to the limitation that their power is to be exercised, not as an end in itself, but as a means " to the end of a better discharge of their duties." (*Dunham* v. *Ottinger. supra*, 434.)

In view of the limitations thus surrounding all these inquisitorial bodies, from the Legislature down, it is inconceivable that the City Charter was intended to vest a wider and more unlimited power in a single administrative officer of the executive branch of the city government. I think, therefore, that the commissioner's powers of investigation are limited to such investigations as are a means to the end of a better discharge of some duty imposed upon, or a better exercise of some power that lawfully may be exercised by the executive branch of the city government, and that investigations by him are lawful only when they have a legitimate and reasonable relation to the performance of some such duty or the exercise of some of those powers. To give the Charter a broader construction probably would render it unconstitutional. (*Carlisle* v. *Bennett, supra*, 217.)

Here there is no showing whatever that these subpœnas *duces tecum* are for the purpose of aiding the exercise of any lawful power or the performance of any duty of the executive branch of the city government. On the contrary, the commissioner's affidavit sets forth, not that the evidence is desired as a guide to some action which the executive lawfully might take, as was the situation in *Matter of Edge Ho Holding Corp.* (256 N. Y. 374), but that the evidence is desired as an end in itself. True, he suggests, but refrains from saying, that the evidence may turn up something discreditable to some one, but that is precisely the sort of official inquisition that uniformly has met with judicial condemnation. (*Jones* v. *Securities & Exchange Commission, supra*, 26, and cases there cited.)

The city council is the legislative branch of the city government, and not an agency of the city, and it purposely has been given powers of investigation of its own, independent of the executive branch, with the right to employ in its investigations counsel of its own selection (*Barry* v. *City of New York*, 175 Misc. 712; affd.,

261 App. Div. 957), and it appears to me to be a wholly untenable idea that an administrative officer of the executive branch of the city government can say that he will investigate in order to find out whether the council has made a wise choice. It also appears to me to be equally untenable for such officer to say that he will investigate because he thinks that if he does it is possible that he may discover that four or five years ago somebody bribed somebody. " Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire * * * and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime," wrote Mr. Justice HOLMES in *Federal Trade Commission* v. *American Tobacco Co.* (*supra*, 305, 306). It is even more difficult to believe that the Legislature has authorized an administrative officer of the executive branch of the city government to do precisely that, and it is also important to note that the provisions of the Fourth Amendment of the Constitution .of the United States now have been written into the Constitution of this State. (Art. 1, § 12.)

Wherever the limit of the commissioner's power to investigate is to be placed, it is at least certain that it stops at the point where it touches some one's right not to be investigated. The New York City Charter gives him power to require the attendance of witnesses (§ 805), but it gives him no power to subpoena documents. Such power as he has in that respect is conferred by section 406 of the Civil Practice Act, and it is well settled that under that statute documents may be subpoenaed only " in a proper case " and that the court is to determine what is a proper case, and that the person affected is entitled to test the propriety of a subpoena *duces tecum* by application to the court in advance of their production. (*Matter of Foster*, 139 App. Div. 769; *Matter of Sun-Ray Cloak Co., Inc.*, 256 id. 620, 623; *Carlisle* v. *Bennett, supra*, 217, 218; *Matter of Hirshfield* v. *Craig, supra*, 117, 118.) It also has been said that, even where the power to investigate exists, " the courts should and will be quick and firm in halting the exercise of those powers for irrelevant, illegitimate or oppressive examinations or purposes." (*Matter of Hirshfield* v. *Hanley*, 228 N. Y. 346, 349.)

Here I find, not only that these subpoenas have not been issued in aid of an investigation having a legitimate and reasonable relation to the better discharge of some duty or better exercise of some power lawfully possessed by the executive branch of the city government, but, also, that they are of much greater scope than even the purpose proclaimed by the commissioner and in that respect fairly

are to be characterized as irrelevant, illegitimate and oppressive. As an illustration of that I note that in his answering affidavit the commissioner says that he is interested in Mr. Ellis' bank records " only in so far as they pertain to the National Conference on Legalizing Lotteries " and not " in any other aspect of Mr. Ellis' affairs " and not in his " financial or professional relationship with other clients," and yet the subpœnas call for every scrap of paper relating to two accounts down to the date of the subpœnas. If the subpœnas were to be obeyed, complete disclosure respecting other transactions and other clients could not be avoided.

The Court of Appeals recently held that the production of case records of treatments of patients in city hospitals could not be required in an investigation of such hospitals by the city council because of the privilege accorded physicians under the Civil Practice Act, and in that case it expressly stated that the privilege therein accorded to attorneys has the same statutory recognition, sanction and protection. (*Matter of N. Y. City Council* v. *Goldwater*, 284 N. Y. 296, 300.) That decision alone, I think, would require that these subpœnas be vacated.

The motion to vacate the subpœnas is granted. Settle order.