OPINION OF THE COURT
Joan A. Madden, J.
Petitioners move for an order pursuant to CPLR 2304 to quash six subpoenas duces tecum issued by respondent New York City Department of Investigation (DOI), which call for petitioners to produce certain records concerning the conduct *176 of their businesses for a specific period.[1] Respondent DOI cross-moves for an order pursuant to CPLR 2308 (b) to compel compliance with the subpoenas.
In support of the motion, petitioners allege that the DOI together with the Department of Consumer Affairs (DCA) have “mounted a coordinated, consistent, continuous campaign to rid this City of any business owned by Carmine Agnello — a hardworking businessman who also happens to be married to the daughter of John Gotti.” Mr. Agnello submits an affidavit that he is the present or former owner of the six petitioner businesses, that New York Shredding Corp. is the only one of these entities which he still owns, and that he is in the process of selling Three Sons Auto Glass, Inc. The affirmation of petitioners’ counsel explains that New York Shredding Corp. is a salvage yard that recycles, processes, sorts, bails and stores scrap metal from automobiles. On June 19, 1998, New York Shredding applied for a scrap metal license from DCA; it received that license on July 9, 1998; and the license was renewed in May 1999.
Petitioners allege that DCA first sought to revoke New York Shredding’s license in September. 1998 based on a violation and misdemeanor to which Mr. Agnello pleaded guilty in 1994, and which were fully disclosed to DCA in New York Shredding’s license application, as well as in several other license applications in 1995 and 1997. On February 2, 1999, DCA voluntarily withdrew the revocation proceeding.
Petitioners assert that DCA then enlisted DOI to issue “sweeping subpoenas as a massive discovery tool in the hope of uncovering some new reason to close down Mr. Agnello.” In March and April 1999, DOI issued the six subpoenas which are the subject of this proceeding upon businesses which Mr. Agnello now owns or previously owned. Petitioners contend that the subpoenas are without justification, as they fail to identify any complaint against or ongoing investigation of petitioners. Petitioners further contend that the subpoenas are “massive, exhaustive and oppressive,” as they call for the identification, copying and production of voluminous documents from six companies, including all payroll records, tax returns, W-2 *177 forms, personnel files, performance evaluations, master control lists, all documents concerning payments to or services rendered by consultants, contractors or agents, all minute books, all corporate resolutions, all documents concerning any loan, mortgage or encumbrance, corporate telephone directories, documents concerning the sale, lease or transfer of any property, and all records of purchases of iron, steel or scrap over $50.
Petitioners maintain that despite having produced over 1,700 documents to DOI after the issuance of the subpoenas, DCA instituted a second revocation proceeding against New York Shredding based on its failure to comply with the subpoenas. The revocation hearing that was scheduled for July 23, 1999 was stayed pursuant to the order to show cause issued by this court, and the determination of the motion to quash and the cross motion to compel. At oral argument on the motion and cross motion, the parties executed a stipulation in which petitioners’ counsel agreed to take into his custody for safekeeping all documents requested in the subpoenas.
As the legal bases for quashing the subpoenas, petitioners argue that: (1) DOI cannot establish the existence or authenticity of a complaint, or the relevance of the subpoenaed materials; (2) the subpoenas are the product of unjustifiable harassment and intimidation; (3) the subpoenas violate the Fourth Amendment of the United States Constitution; and (4) DOI lacks authority to issue the subpoenas.[2]
In opposition to the motion and in support of its cross motion, DOI contends that: (1) it has the statutory authority to. conduct the investigation in furtherance of which the subpoenas were served; (2) it has the power to issue the subpoenas; (3) an adequate factual basis exists for the investigation pursuant to which the subpoenas were served; (4) the subpoenas seek docu *178 ments and records relevant to the matters under investigation; and (5) the subpoenas were properly served.[3]
I. DOFs Jurisdictional Authority
At the outset, the court must determine whether DOI has jurisdictional authority to conduct an investigation of private businesses licensed by a City agency, and to issue subpoenas for those licensed businesses to produce documents in furtherance of said investigation.[4] (Matter of Levin v Murawski, 59 NY2d 35, 41 [1983]; Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, cert denied 395 US 959 [1969]; C.S.A. Contr. Corp. v Stancik, 259 AD2d 318 [1st Dept 1999].) As there appears to be no case law directly on point, the determination of this issue involves an analysis of DOFs investigatory powers as delineated in relevant provisions of the New York City Charter, the Executive Orders implementing those Charter provisions, and related decisional law.
Pursuant to section 803 (b) of chapter 34 of the New York City Charter, the DOI Commissioner “is authorized and empowered to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency.” (Matter of New York City Dept. of Investigation v Passannante, 148 AD2d 101, 103 [1st Dept 1989].) Additionally, the jurisdiction of the DOI Commissioner “extend [s] to any agency, officer, or employee of the city, or any person or entity doing business with the city, or any person or entity who is paid or receives money from or through the city or any agency of the city.” (NY City Charter *179 § 803 [d]; Matter of New York City Dept. of Investigation v Passannante, supra.) Furthermore, the DOI Commissioner has the power to compel the attendance of witnesses to testify “[flor the purpose of ascertaining facts in connection with any study or investigation authorized by this chapter.” (NY City Charter § 805 [a]; Matter of New York City Dept. of Investigation v Passannante, supra.)
On July 26, 1978, the Mayor issued Executive Order No. 16, entitled “Commissioner of Investigation, Inspectors General and Standards of Public Service,” which is intended to implement and enforce chapter 34 of the Charter.[5] Section 1, “Responsibilities of Commissioner,” states in pertinent part: “The Commissioner of Investigation (hereinafter called the Commissioner) shall have general responsibility for the investigation and elimination of corrupt and criminal activity, conflicts of interest, unethical conduct, misconduct and incompetence: (i) by City agencies, (ii) by City officers and employees, and (iii) by persons regulated by, doing business with or receiving funds directly or indirectly from the City (hereinafter called persons dealing with the City), with respect to their dealings with the City.”
In construing chapter 34 of the Charter, the Appellate Division, First Department, has recognized that the “broad powers, which the Charter gives to the DOI, in the investigative area, ‘are of great importance for the efficient administration of the huge machinery of government in the city of New York’ ” (Matter of New York City Dept. of Investigation v Passannante, supra, at 103, quoting Matter of Edge Ho Holding Corp., 256 NY 374, 381 [1931]). At the same time, however, such powers are not unlimited. (Supra.) “It is ancient law that no agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered, especially with respect to subpoenas duces tecum.” (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., supra, at 918.) As one court has stated: “[T]he [C]ommissioner [of DOI] is still an administrative officer *180 of the executive branch of the city government, and ‘ the investigations he is authorized to make are limited to such as have a legitimate and reasonable relation to the operation of the executive branch of that government.” (Matter of Ellis, 176 Misc 887, 890 [Sup Ct, NY County 1941].)
Petitioners assert that DOI’s jurisdiction is limited to investigating the executive branch of City government, i.e., City agencies, and that DOFs jurisdiction is not intended to cover investigations of private businesses simply because they are licensed by a City agency, since private businesses licensed by a City agency are not “doing business with the city” within the meaning of New York City Charter § 803 (d). The court does not agree that the term “doing business” must be construed so narrowly, especially when section 803 (d) is read in a manner as to be consistent with the other relevant statutory provisions. It is an established rule of statutory construction that a statute should be given “a sensible and practical over-all construction, which is consistent with and furthers its scheme and purpose and which harmonizes all its interlocking provisions.” (Matter of Long v Adirondack Park Agency, 76 NY2d 416, 420 [1990].)
The fact that the instant petitioners are private entities neither employed by nor in contractual privity with the City does not shield them from DOI’s investigative power, contained in New York City Charter § 803 and Executive Order No. 16. (See, C.S.A. Contr. Corp. v Stancik, 259 AD2d 318, supra; Matter of New York City Dept. of Investigation v Passannante, supra, at 104; Matter of Weintraub v Fraiman, 30 AD2d 784 [1st Dept 1968], affd 24 NY2d 918 [1969].) In each of the foregoing decisions, the Appellate Division, First Department, upheld the authority of the agency in question to issue the subpoena. In C.S.A. Contr. Corp. v Stancik (supra), the Special Commissioner of Investigation for the New York City School District was authorized to issue an investigatory subpoena, not just to officers and employees of City schools and City agencies, but also to a private company that was not in contractual privity with the Board of Education, but had worked on a Board of Education project as a subcontractor and was suspected of misconduct in connection therewith. In Matter of New York City Dept. of Investigation v Passannante (supra), the City had paid the Fashion Institute of Technology (FIT) $20 million, and DOI was investigating, inter alia, vendors and consultants doing business with FIT. The court determined that DOI’s investigative power contained in New York City Charter § 803 *181 extends to an individual and private corporation which had performed consulting services for FIT, and were neither employed by nor in contractual privity with the City. In Matter of Weintraub v Fraiman (supra, at 784-785), DOFs “inquisitorial powers” were found to reach the office of City Marshal, “[a]nd by logical extension that power reaches any person, even though unconnected with city employment, when there are grounds present to sustain a belief such person has information relative to the subject matter of the investigation.”
Here, petitioner businesses are licensed by DCA as either scrap processors or secondhand dealers, which, according to respondent, are industries that are heavily regulated because of their historical connection to trafficking in, and the sale of, stolen property. As entities licensed by a City agency, an investigation into petitioners’ business activities is essentially an investigation into the “affairs” and “functions” of a City agency (NY City Charter § 803 [b]), since such investigation has a “legitimate and reasonable relation” to the critical agency function of determining the suitability and business integrity of license applicants and holders. (See, Matter of Ellis, supra, at 890.)
Moreover, the clear and express language of Executive Order No. 16 authorizes DOI to investigate and eliminate corrupt or other criminal activity, unethical conduct or misconduct “by persons regulated by” the City. (Executive Order No. 16, § 1; see, C.S.A. Contr. Corp. v Stancik, supra.) Here, DOI is investigating six entities allegedly owned and operated by Mr. Agnello, who DOI believes may be engaged in criminal or corrupt activity, or unethical conduct or misconduct, based on, inter alia, the discovery of stolen auto parts on premises operated pursuant to a license issued to Mr. Agnello, a failure to maintain records as required by statute, information that the sale of certain licensed businesses may have been sham transactions, and Mr. Agnello’s purported ties to organized crime. Each of the six petitioner entities either are or had been licensed by DCA. As the holder of a City license, each petitioner is a person “regulated by” the City, since a licensee’s activities are subject to continuing and extensive regulation in return for the privilege of operating a business under a City license. Regulations governing scrap metal processors and secondhand dealers include mandatory fingerprinting and record keeping, *182 and inspection of records without notice.[6] Thus, as petitioner licensees are regulated by the City, DOI has the authority to investigate their alleged criminal or corrupt activities.
II. Factual Basis to Support Subpoenas
A motion to quash a nonjudicial investigatory subpoena requires the issuer to come forward with a factual basis to establish the relevancy of the items sought to the subject matter of the investigation. (C.S.A. Contr. Corp. v Stancik, supra; Matter of New York City Dept. of Investigation v Passannante, 148 AD2d, supra, at 104, citing Virag v Hynes, 54 NY2d 437 [1981].)
Here, DOI has established a sufficient factual basis for its joint investigation with DCA into the propriety of the current and continued licensing of Mr. Agnello and the entities in which he maintains an interest. As detailed in the affirmation of DCA’s General Counsel, Robert A. Martin, and the affirmation of Felice A. Mennin, Deputy General Counsel to DOI Commissioner Edward J. Kuriansky, the investigation was initiated upon a request for assistance from DCA and was based, upon information directly received by DOI and gathered by DCA, from various sources, including New York City and Federal law enforcement officials.
Both Mr. Martin and Ms. Mennin identify the source and content of specific items of information, which include the following: (1) the New York City Police Department informed DCA that in June 1997 a number of stolen engines and other auto parts were discovered by police officers on the premises of Jamaica Auto Glass, Inc. and Jamaica Auto Salvage, Inc., and at that time, Mr. Agnello was the owner of record; (2) at the same time, police officers discovered that Jamaica Auto Glass, Inc. had no current “police book” containing a record of purchases and sales, as required by law; (3) DCA received in *183 formation from the New York City Police Department’s Organized Crime Investigation Division concerning Mr. Agnello’s alleged close'association with organized crime figures and their involvement in Mr. Agnello’s business activities; (4) the United States Government had represented in Federal court that it had evidence that Mr. Agnello was a “made” member of the Gambino crime family, that he operated as a “soldier” in the criminal “crew” of John A. Gotti, son of John J. Gotti, and that he has ties well beyond family ties to organized criminal activity; (5) a review of DCA’s records revealed that although three of Mr. Agnello’s companies (Jamaica Auto Glass, Inc., Jamaica Auto Salvage, Inc. and Jamaica Auto Salvage) surrendered their DCA licenses in January 1999, three other entities (East Coast Auto Glass Inc., East Coast Auto Salvage Inc. and East Coast Foreign Auto Salvage) had obtained DCA licenses; (6) pursuant to a DCA subpoena, East Coast’s owner, Paul Scaglione, produced documents indicating that the transactions between him and Mr. Agnello were not bona fide sales; and (7) Mr. Agnello has been arrested nine times and convicted at least three times, which although properly revealed to DCA, gave concern that there may be substance to the allegations of his affiliation with organized crime.
Based upon this information, and in furtherance of the DOI and DCA joint inquiry prompted thereby, DOI issued subpoenas to six entities allegedly owned and operated by Mr. Agnello, which either are or had been licensed by DCA as scrap metal processors or secondhand dealers. According to DOI, if the allegations concerning Mr. Agnello’s ties to organized crime are found to be true, or if Mr. Agnello has deceived DCA by engaging in sham transactions to make it appear that he relinquished his interests in certain businesses purportedly sold, or if Mr. Agnello was involved in a previously licensed business dealing in stolen auto parts, DCA may determine that it is in the City’s best interests to revoke any licenses currently held by or for the benefit of Mr. Agnello. (See, Farrington Fish Receiving Zone v Washington, Sup Ct, NY County, July 30, 1996, Gangel-Jacob, J., index No. 11230/96 [upholding denial of license based on association with known organized crime figures since it showed that the applicant lacked requisite good character, honesty and integrity].)
Based upon the foregoing and upon the specific nature of the businesses licensed, DOI has established sufficient factual support for its joint investigation with DCA. The investigation is grounded in valid concerns as to the character and fitness of *184 those purported to be principals and owners of entities licensed as scrap metal processors or as secondhand dealers, industries heavily regulated due to concerns about criminal activity.
As to the relevancy of the subpoenaed materials to matters under investigation, with the exception of the request for personnel records, the materials sought (e.g., “police books” and other records required to be maintained pursuant to City law; records concerning the transfer and sale of the businesses; records concerning payments to consultants; corporate tax returns; documents concerning the transaction of business between the subpoenaed entities) are relevant to the inquiry into whether the businesses in question were being, or had been, operated in a lawful manner, by persons of requisite character and fitness. At oral argument, DOI agreed to accept tax records for the businesses, including W-2s of employees, in lieu of personnel records, and petitioners’ counsel conceded that the “police books” were appropriately requested.
III. Harassment
Petitioners argue that the subpoenas are an attempt to harass and intimidate Mr. Agnello for improper reasons unrelated to the petitioner businesses. While it is well settled that a nonjudicial investigatory subpoena may be challenged on the ground that it constitutes harassment (Matter of New York City Dept. of Investigation v Passannante, 148 AD2d, supra, at 104-105, citing Myerson v Lentini Bros. Moving & Stor., 33 NY2d 250 [1973]; Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., supra, at 918), petitioners are unable to show harassment under the circumstances presented in this proceeding. As the Court of Appeals recognized in Myerson v Lentini Bros. Moving & Stor. (supra, at 260), “the scope of relevancy and materiality overlaps with the risks and possible fact of unjustified harassment.” Thus, the court’s foregoing determination that DOI has established “authority, relevancy, and some basis for inquisitorial action” (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d, supra, at 918), necessarily mitigates against any claim of unjustified harassment (Myerson v Lentini Bros. Moving & Stor., supra).
IV. Fourth Amendment Violation
Finally, petitioners contend that the subpoenas violate the Fourth Amendment because they are broad in scope, general in directive, and irrelevant to any complaint, “effectively *185 constituting] an unconstitutional general warrant.” This contention is not persuasive. The Fourth Amendment simply requires that a “ ‘subpoena be sufficiently limited in scope, relevant in purpose, and specific in directive so that compliance will not be unreasonably burdensome.’ ” (Donovan v Lone Steer, 464 US 408, 415 [1984].) The court has already determined that these requirements have been satisfied.
V. Conclusion
In light of the foregoing determinations, petitioners’ motion to quash the subpoenas is denied, and respondent’s cross motion to compel compliance with the subpoenas is granted. Within 20 days of service of a copy of this order with notice of entry, petitioners’ counsel is directed to provide to respondent’s counsel the documents held in his possession pursuant to the parties’ July 27, 1999 so-ordered stipulation, with the exception of personnel records.
Accordingly, it is hereby ordered and adjudged that the motion to quash the subpoenas is denied, and the cross motion to compel compliance with the subpoenas is granted; and it is further ordered and adjudged that within 20 days of service of a copy of this order with notice of entry, petitioners’ counsel is directed to provide to respondent’s counsel the documents held in his possession pursuant to the parties’ July 27, 1999 so-ordered stipulation, with the exception of personnel records.

. The subpoena for New York Shredding Corp. calls for documents for the period June 1, 1998 to the date of the subpoena, March 19, 1999. The subpoenas for Jamaica Auto Salvage, Jamaica Auto Salvage, Inc., Jamaica Auto Glass, Inc., Jamaica Auto Glass, and Three Sons Auto Glass call for documents for the period January 1, 1996 to the date of the subpoenas, March 31, 1999.

. The court declines to address the additional argument presented for the first time in petitioners’ reply memorandum, based on a violation of Mr. Agnello’s First Amendment right of intimate association.
The court also declines to address petitioners’ argument that DOI usurped DCA’s powers and duties, which appears in the August 10, 1999 letter brief from petitioners’ counsel. That letter was submitted in response to the court’s request at oral argument to submit additional papers on the issue of DOI’s authority to issue the subpoenas. At that time, petitioners’ counsel stated that he could not answer the court’s question as to DCA’s authority. In any event, the court is not persuaded that New York City Charter § 11 (b) is intended to eliminate a joint investigation between DOI and DCA, as a duplicative or overlapping agency function.

. Petitioners do not dispute that the subpoenas were properly served.
DOI further contends that the motion to quash should be denied because it was not properly made in the absence of a request to modify or withdraw the subpoenas pursuant to CPLR 2304. In light of the court’s determination denying the motion to quash on its merits, the court need not resolve this procedural issue.

. At oral argument, petitioners’ counsel could not answer the question posed by the court, as to whether DCA had the authority to investigate its own licensees and to issue subpoenas in furtherance of such an investigation. In the letter to the court dated August 10, 1999, petitioners’ counsel concedes that “DCA has certain powers to investigate its licensees,” and argues that “DOI’s investigation of these DCA licensees, for the avowed purpose of determining whether petitioners are fit to hold a DCA license, unlawfully encroaches upon DCA’s functions and jurisdiction.” As the subpoenas which are subject of this proceeding were issued by DOI, and not DCA, the court need not resolve any issue as to DCA’s authority.

. In New York City, the City Council is the body vested with legislative powers (NY City Charter § 21), and the Mayor, as chief executive officer, is empowered to implement and enforce legislative pronouncements emanating from the Council, by issuing Executive Orders. (Subcontractors Trade Assn. v Koch, 62 NY2d 422, 427 [1984].) In opposing the motion to quash, the City relies on Executive Order No. 16. Petitioners neither challenge nor address this Executive Order.

. More specifically, applicants for a dealer in secondhand articles license and a secondhand automobile dealer’s license must consent to being fingerprinted and submit a photograph so that their criminal history may be checked. (Administrative Code of City of NY §20-266 [d]; 6 RCNY 1-01.) Once a license is granted, the licensee is subject to regulations requiring, inter alia, the display of signs, the labeling of articles, furnishing a bond to the City, maintaining accurate records of purchases and sales, and maintaining a “police book” which contains certain information subject to inspection without notice. (Administrative Code § 20-273; 6 RCNY 2-101, 2-103.) The license is valid for a two-year term, and an application for renewal requires the submission of additional information concerning the licensee and the business. (6 RCNY 1-02.)